UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUE SPIKE, LLC,<br><br>   Plaintiff,<br><br>  v.<br><br>ADOBE SYSTEMS, INC., et al.,<br><br>   Defendants. | Case No.  14-cv-01647-YGR   (JSC)<br><br>**ORDER GRANTING MOTION TO STRIKE PLAINTIFF BLUE SPIKE'S INFRINGEMENT CONTENTIONS AND STAY DISCOVERY**<br><br>Re: Dkt. No. 51 |

This patent infringement case has been referred to the undersigned magistrate judge for the purpose of discovery. (Dkt. No. 38.) Defendant Adobe Systems, Inc. ("Adobe") has filed a Motion to Strike the Infringement Contentions ("ICs") filed by Plaintiff Blue Spike, LLC ("Blue Spike") and to stay discovery. (Dkt. No. 51.) Instead of responding to the substance of Adobe's motion, Blue Spike submitted an amended claims chart along with a one-page opposition asking the Court to deny as moot Adobe's motion without prejudice to re-filing the same motion after having an opportunity to meet and confer with Blue Spike regarding the amendments. (Dkt. No. 53.) Adobe contends that the ICs—even as amended—still suffer from a number of defects that warrant them stricken and require discovery stayed pending further amendment. Having carefully considered the filings in this case, and having the benefit of oral argument on January 22, 2015, the Court GRANTS the motion, but also grants Blue Spike limited leave to amend the Amended ICs in the manner set forth below.

**BACKGROUND**

The procedural history of this case has been far from simple. On August 22, 2012, Plaintiff filed this suit against Adobe in the Eastern District of Texas claiming direct and indirect willful infringement. (Dkt. No. 1.) The matter was then consolidated for all pretrial purposes with

dozens of infringement cases that Blue Spike filed against unrelated defendants regarding the same patents. (Dkt. No. 11.) This case—and several others—was then severed from the consolidated matter and transferred to the Northern District of California in March of 2014. (Dkt. No. 14.) As of the filing of the First Amended Complaint ("FAC") on September 15, 2014, Blue Spike claims infringement of five of its U.S. patents: Nos. 7,346,472 (the "'472 patent"); 7,660,700 (the "'700 patent"); 7,949,494 (the "'494 patent"); 8,214,175 (the "'175 patent"); and 8,712,728 (the "'728 patent," and together, the "Patents-in-Suit"). The Patents-in-Suit are all titled "Method and Device for Monitoring and Analyzing Signals"; they share a common specification, though the claims differ.

The products at issue in this case involve ad insertion software technology—*i.e.*, a "video advertising platform" or "ad insertion technology"—for streamed online video content that allows the owner of the content to insert advertisements about the original source of the content, where to buy it legally, and other related information whenever and wherever the content is streamed on the internet in order to monetize the streaming. The case also involves software technology that enables a computer to recognize that content in the first instance. One method of content recognition is called "digital fingerprinting," which enables online rapid content recognition by comparing streamed content to "fingerprints" of source material—that is, comparing certain characteristics of the streamed content to content catalogued in a database. In the FAC, Blue Spike alleges infringement by four of Adobe's products that identify, manage, and monetize online media content: Adobe Auditude, Project Primetime, Auditude's Connect 2.0, and Auditude's Connect Platform. (Dkt. No. 43 ¶ 27.) Some background into the development of these fingerprinting and video ad platform technologies is relevant to the instant dispute.

Specifically, the FAC alleges that a company called Auditude, Inc. ("Auditude"), which Adobe acquired in 2011, created the infringing technologies. Auditude developed both digital fingerprinting technology—under the guise of programs like Content ID and Connect 2.0—and ad insertion technology—which became Adobe Auditude. (Dkt. No. 52-13 ¶ 4.) In their briefing and at oral argument, Adobe emphasized the discrete nature of the two technologies. Adobe also underscored that Auditude divested itself of the digital fingerprinting side of its business, which a

2

company called IntoNow, Inc. ("IntoNow") took over. (*Id.* ¶ 6; Dkt. No. 51 at 9.) Yahoo!, a former defendant in this matter, acquired IntoNow and the fingerprinting technology along with the former Auditude team that developed that technology. (Dkt. No. 52-13 ¶¶ 6-8.) By contrast, Adobe acquired what remained of Auditude— the ad insertion technology—and, at least according to Adobe, ceased its involvement in any fingerprinting technology.[1] (*Id.* ¶ 9.) In other words, Adobe contends that its Auditude ad insertion technology does not perform the fingerprinting that Auditude initially developed, which landed in IntoNow's wheelhouse and involved different products altogether.[2]

Notably, Blue Spike filed its first set of ICs while this litigation was still in the Eastern District of Texas, and in these Texas contentions it asserted over 100 claims. (*See* Dkt. No. 52-2.) At the first Case Management Conference after the transfer to this District, which occurred in July of 2014, the district court cautioned that such a "kitchen sink approach" would not be countenanced and that Blue Spike may well need to redraft the Texas ICs to bring them into compliance with this District's Local Rules. (Dkt. No. 52-4.) The district court also squarely rejected Blue Spike's request to inspect the source code of Adobe's products prior to serving ICs. (Dkt. No. 52-4.)

Blue Spike served its initial set of ICs on September 26, 2014. (Dkt. No. 52-1.) These initial ICs contend that four products—Adobe Auditude, Project Primetime, Auditude's Connect 2.0, and Auditude's Connect Platform—infringe 30 claims across the five Patents-in-Suit.[3] The ICs included a single claim chart for all four accused products; that is, instead of separately identifying which claims it was asserting over which product, the chart grouped them all together. Adobe immediately wrote to Blue Spike identifying deficiencies in the ICs in an effort to have Blue Spike amend them without Court intervention. (*See* Dkt. Nos. 52-5.) Blue Spike refused to

---

[1] At oral argument, Adobe noted that even after the IntoNow divestment, Auditude retained a few residual fingerprinting clients using IntoNow's technology, but ceased any fingerprinting activity whatsoever in 2012.

[3] Specifically, the claim chart in these initial ICs asserts that Adobe's four accused products infringe Claims 3 and 4 of the '472 patent; Claims 1-8, 40, and 51 of the '700 patent; Claims 1-5, 11, and 24 of the '494 patent; claims 11-16 of the '175 patent; and claims 1, 12, and 25-30 of the '728 patent. (Dkt. No. 49-1.)

1    supplement the ICs without engaging in discovery—namely, until it had the opportunity to inspect
2    source code for Defendant's products—precisely what the district court had already denied.  (*See*
3    Dkt. Nos. 52-6, 62-7.)  After several weeks of informal communication between the parties,
4    Adobe sought to file a joint letter brief in accordance with the Court's standing order; when Blue
5    Spike did not cooperate with the filing, Adobe filed a statement on its own.  (Dkt. No. 49.)  Given
6    the complexity of the subject matter, the Court granted Adobe's request to file a noticed motion
7    regarding this dispute.  (Dkt. No. 50.)

8        Adobe filed the instant motion on December 15, 2014.  (Dkt. No. 51.)  At bottom, Adobe
9    contends that Blue Spike's ICs fail to comply with the Patent Local Rules for the following
10   reasons:  (1) the ICs fail to provide a claim chart for each of the accused instrumentalities and
11   instead group together all four products in violation of Patent Local Rule 3-1(c); (2) the claim
12   chart cites to exhibits that discuss Auditude's products generally—both fingerprinting and ad
13   insertion products—without identifying the particular product to which each exhibit refers,
14   rendering the documentary support insufficient under Patent Local Rule 3-2; (3) the ICs chiefly
15   rely on online articles published by third parties that do not specifically identify the accused
16   products and are therefore insufficient under Patent Local Rule 3-2; and (4) the ICs do not
17   properly set forth allegations of infringement under the doctrine of equivalents in violation of
18   Patent Local Rule 3-1(e); and (5) fail to allege indirect infringement, willful infringement, or
19   assert a priority date in accordance with the Patent Local Rules.  (Dkt. No. 51 at 6.)  The gravamen
20   of Adobe's argument is that the ICs fail to put Adobe on notice of Blue Spike's actual theories of
21   the case and the exact substance of its allegations.  Accordingly, Adobe seeks an order that:  (1)
22   strikes the ICs in their entirety; (2) dismisses Blue Spike's indirect infringement and willful
23   infringement allegations, or at least precludes Blue Spike from making any further assertion of
24   indirect infringement beyond those alleged in the FAC; (3) precludes Plaintiff from asserting a
25   priority date earlier than September 7, 2000 for the Patents-in-Suit; and (4) stays all discovery as
26   to Adobe and its products until Blue Spike serves ICs that comply with the Patent Local Rules.
27   (*Id.* at 7-8.)

28       Blue Spike filed a one-page opposition asking the Court to deny Adobe's motion as moot

because it has since served an amended claims chart—which the Court construes as amended ICs ("AICs")—that, from Plaintiff's perspective, "specifically address[ ]Defendant's concerns." (Dkt. No. 53 at 1.) Blue Spike notes that changes set forth in its AICs only addressed a fraction of Adobe's objections to the ICs—that is, the lament that the ICs contained a single claim chart addressing all four accused products. (*See id.* ("Blue Spike has reduced the number of accused products to address Adobe's main issue[.]").) In the AICs, Blue Spike removed the reference to Adobe's four accused products and instead lists only "Auditude's Video Advertising Platform"—*i.e.*, Adobe Auditude—as the accused product, removing references to the other three Auditude products (Project Primetime, Connect 2.0, and the Connect Platform). (*See* Dkt. No. 53 at 1; *see, e.g.*, Dkt. No. 53-2 at 2.) Plaintiff also added another exhibit. (Dkt. No. 53-2 at 114.) The AICs are otherwise identical to the initial ICs; they cite to the same exhibits and include the same language concerning the doctrine of equivalents, willful infringement, indirect infringement, and the stated priority date. (*Compare* Dkt. No. 49-1 *with* Dkt. No. 52-1.) In fact, Blue Spike appears to concede that Adobe may well have lingering objections to the AICs, but asks the Court to require Adobe to re-file any motion to strike the AICs after a meet and confer between the parties. (Dkt. No. 53 at 1.)

In its reply, Adobe maintains that the AICs do not moot its motion because, despite narrowing the claims chart to one accused product the AICs are still defective and insufficient under the Local Rules, and requiring them to further meet and confer with Blue Spike would serve no purpose given that party's history of refusing to cooperate with Adobe. (Dkt. No. 54 at 2, 8.) Moreover, because Blue Spike's one-page opposition did not substantively address the arguments set forth in Adobe's motion to strike, Adobe asks the Court to deem a number of these issues conceded. (*See id.* at 6-7.) Adobe also asks the Court to deny Blue Spike leave to further amend its infringement contentions given that it filed the AICs without seeking leave to amend in violation of Patent Local Rule 3-6. (*Id.* at 8.)

The Court held a hearing on Adobe's motion on January 22, 2015.

## LEGAL STANDARD

Patent Local Rule 3-1 requires, in pertinent part:

> [A] party claiming patent infringement shall serve on all parties a 'Disclosure of Asserted Claims and Infringement Contentions[ ]' . . . [which] shall contain the following information:
>
> (a) Each claim of each patent in suit that is allegedly infringed by each opposing party, including for each claim the applicable statutory subsections of 35 U.S.C. § 271 asserted;
>
> (b) Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known. Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;
>
> (c) A chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.
>
> (d) For each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement. Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described.
>
> (e) Whether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality

"The overriding principle of the Patent Local Rules is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *Bender v. Maxim Integrated Prods., Inc.*, No. C 09-01152 SI, 2010 WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010) (alteration in original) (internal citation omitted). Patent L.R. 3-1 is a discovery device that "takes the place of a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery." *Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-

1    2079-VRW, 2002 WL 32126128, at *4 (N.D. Cal. Aug.13, 2002); *see Maxim Integrated Prods.*,
2    2010 WL 1135762, at *2. The rule is also intended to require the party claiming infringement "to
3    crystallize its theories of the case early in the litigation and to adhere to those theories once
4    disclosed." *Bender v. Advanced Micro Devices, Inc.*, No. C-09-1149 MMC (EMC), 2010 WL
5    363341, at *1 (N.D. Cal. Feb. 1, 2010). The party is required to include in its infringement
6    contentions all facts known to it, including those discovered in its pre-filing inquiry. *See Renesas*
7    *Tech. Corp. v. Nanya Tech. Corp.*, No. C03-05709-JFHRL, 2004 WL 2600466, at *2 (N.D. Cal.
8    Nov. 10, 2004).

9    "[A]ll courts agree that the degree of specificity under Local Rule 3-1 must be sufficient to
10   provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of
11   proving infringement.'" *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022,
12   1025 (N.D. Cal.2010) (quoting *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986
13   (Fed. Cir. 2000)). While the patent rules do not "require the disclosure of specific evidence nor do
14   they require a plaintiff to prove its infringement case, . . . a patentee must nevertheless disclose
15   what in each accused instrumentality it contends practices each and every limitation of each
16   asserted claim to the extent appropriate information is reasonably available to it." *DCG Sys. v.*
17   *Checkpoint Techs., LLC*, No. C 11-03792 PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr.16,
18   2012); *see also Shared Memory Graphics*, 812 F. Supp. 2d at 1025 (stating that patent holder
19   "must map specific elements of Defendants' alleged infringing products onto the Plaintiff's claim
20   construction").

21                                              **DISCUSSION**

22   Where appropriate, courts treat a motion to strike as a motion to compel amendment to
23   include additional information infringement contentions. *See, e.g.*, *Innovative Automation LLC v.*
24   *Kaleidescape, Inc.*, No. C13-05651 JD, 2014 WL 5408454, at *3 (N.D. Cal. Oct. 23, 2014);
25   *France Telecom, S.A. v. Marvell Semiconductor, Inc.*, No. 12-cv-04967 WHA (NC), 2013 WL
26   1878912, at *2 (N.D. Cal. May 3, 2013) (citations omitted); *FusionArc, Inc. v. Solidus Networks,*
27   *Inc.*, No. 06-cv-06760 RMW (RS), 2007 WL 1052900, at *2 (N.D. Cal. Apr. 5, 2007); *see also*
28   *Renesas Tech. Corp.*, 2004 WL 2095698, at *1 (referring motion to strike preliminary

infringement contentions to assigned magistrate judge "[b]ecause the primary relief Defendants seek is an order compelling Plaintiff to provide adequate disclosures"). Here, the relief that Adobe seeks is adequate notice of how its products allegedly infringe, and Adobe specifically seeks an order directing Blue Spike to amend or supplement its contentions in accordance with the Patent Local Rules. Accordingly, the Court treats Adobe's request as a motion to strike, and in the alternative, to compel amendment.

The Court will consider the AICs that Blue Spike filed along with its opposition to Adobe's motion to strike, despite Blue Spike's failure to seek leave to amend as the Patent Local Rules require.[4] *See* Patent L.R. 3-6 ("Amendment of the Infringement Contentions . . . may be made only by order of the Court upon a timely showing of good cause."). Adobe contends that Blue Spike's ICs are deficient under Rules 3-1 and 3-2 for a number of reasons, including: (1) failure to comply with Rule 3-1(c) by providing a single claim chart instead of a chart for each accused instrumentality; (2) failure to properly support the ICs in the claim chart through evidence as Rule 3-2 requires; (3) failure to set forth proper allegations of infringement under the doctrine of equivalents as Rule 3-1(e) requires; (4) failure to provide a basis for claims of willful infringement as Rule 3-1(d) requires; (5) failure to provide a basis for claims of indirect infringement as Rule 3-1(e) requires; and (f) failure to comply with Rule 3-1(f) by providing a specific priority date.

---

[4] To demonstrate good cause for leave to amend ICs, the Court's Local Rules require that the moving party must show that it was diligent in amending its contentions and then that the non-moving party will not suffer undue prejudice if the motion to amend is granted. *See 02 Micro Int'l Ltd. v. Monolithic Pwr. Sys., Inc.*, 467 F.3d 1355, 1366-68 (Fed. Cir. 2006) (upholding the Northern District of California's Patent Local Rules). Relevant to this determination, among other things, is whether the request to amend is motivated by gamesmanship. *See Acco Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.*, No. C 04-03526 SI, 2008 WL 2168379, at *1 (N.D. Cal. May 22, 2008) (citation omitted). Although, under the circumstances presented here, it appears that Blue Spike's continued delay and refusal to amend its ICs was, perhaps, motivated by gamesmanship, the requested amendment nonetheless fulfills the purpose of the Local Rules by reducing the number of Accused Products, thereby "crystalliz[ing]"—at least in comparison to its initial ICs—"their theories of the case[.]" *02 Micro*, 467 F.3d at 1366 n.12. Accordingly, the Court will consider whether the AICs—in particular, the revised claim chart that Blue Spike submitted with its opposition—conforms to the Local Rules.

**DISCUSSION**

**I.      THE CLAIM CHART FAILS TO COMPLY WITH THE PATENT LOCAL RULES**

Adobe challenges Blue Spike's AICs on several fronts. A careful analysis of Blue Spike's AICs indicates that they fail to comply with the Patent Local Rules in a number of respects.

**A.      Specificity of Claims & Supporting Documentation**

Adobe contends that Blue Spike's claim chart does not provide the level of specificity Patent Local Rule 3-1 requires and that the documents submitted in support of the contentions are insufficient under Rule 3-2. To comply with these rules, a plaintiff must identify how the defendant's products infringe "with as much specificity as possible with the information currently available to it." *Creagri*, 2012 WL 5389775, at *3; *accord FusionArc*, 2007 WL 1052900, at *3 (denying defendant's motion to strike ICs where the plaintiff had "provided all of the information in its possession as to how" defendant's product infringed and "disclosed, to the extent of its present knowledge, where it believes the infringement lies"). This disclosure is generally performed in a claim chart, which is supposed to "identify *specifically* where each limitation of each asserted claim is found within [the challenged product] . . . which necessitates a level of detail that reverse engineering or its equivalent would provide." *Infineon Techs. v. Volterra Semiconductor*, No. C 11-06239 MMC (DMR), 2013 WL 322570, at *4 (N.D. Cal. Jan. 28, 2013) (emphasis in original) (internal quotation marks and citation omitted). However, Patent Local Rule 3-1(c) "does not require [a plaintiff] to reverse engineer every product it has accused." *France Telecom*, 2013 WL 1878912, at *3 (citation omitted); *see also Bender v. Freescale Semiconductor, Inc.*, No. 09-cv-01156 PHJ (MEJ), 2010 WL 1689465, at *4 (N.D. Cal. Apr. 26, 2010) (noting that reverse engineering is not a per se requirement). What matters is whether the plaintiff has included enough information in the ICs to reveal its theory of infringement "on a claim by claim, element by element basis[.]" *Freescale Semiconductor*, 2010 WL 1689465, at *4. This disclosure may be accomplished by relying exclusively on the defendant's advertising or marketing materials for the facts of its contentions, *if* those materials provide enough information. *See France Telecom*, 2013 WL 1878912, at *3; *see, e.g.*, *Creagri, Inc. v. Pinnaclife, Inc.*, No. 11-cv-06635 LHK(PSG), 2012 WL 5389775, at *3 (N.D. Cal. Nov. 2, 2012) (finding the plaintiff's

9

1    ICs sufficient where they relied exclusively on the defendant's advertising materials to determine
2    how the accused product operated); *FusionArc, Inc. v. Solidus Networks, Inc.*, No. 06-cv-06760
3    RMW (RS), 2007 WL 1052900, at *2 (N.D. Cal. Apr. 5, 2007) (finding the plaintiff's ICs
4    sufficient where they relied on the defendant's marketing materials to determine how the accused
5    product operated); *see also France Telecom*, 2013 WL 1878912, at *4 (finding the plaintiff's ICs
6    sufficient where they relied primarily on industry standards to determine how the accused product
7    worked). To that end, the Patent Local Rules provide some flexibility for a plaintiff given that
8    "there are times when [a] plaintiff's preparation is restricted by defendants' sole possession of the
9    information plaintiffs need." *France Telecom*, 2013 WL 1878912, at *4 (citation omitted). This
10   is particularly true in cases involving allegedly-infringing source code. *See Theranos, Inc. v.*
11   *Fuisz Pharma LLC*, No. 11-cv-05236-YGR, 2012 WL 6000798, at *6 n.7 (N.D. Cal. Nov. 30,
12   2012) (citation omitted) (noting "courts' 'recognition' that there are situations where a plaintiff is
13   constrained by defendants' sole possession of information" which "relates to cases involving
14   allegedly-infringing source code"); *see also DCG Sys.*, 2012 WL 1309161, at *2 n.13. Still,
15   Patent Local Rule 3-1(c) requires more than an "infringement contention that simply mimics the
16   language of the claim." *Network Caching Tech. LLC v. Novell Inc.*, No. 01-cv-02079 VRW, 2002
17   WL 32126128, at *6 (N.D. Cal. Aug. 13, 2002).
18        Here, as written, the claim chart in the AICs does not sufficiently "'crystallize[s]
19   [Plaintiff's] theories of the case'" as the Patent Local Rules require. *LG Elecs., Inc. v. Q-Lity*
20   *Comp., Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002). Although Blue Spike has superficially
21   addressed Adobe's primary challenge to the initial claim chart by naming only one accused
22   instrumentality, "Adobe's Auditude Video Advertising Platform," and eliminating the others (*see,*
23   *e.g.*, Dkt. No. 53-2 at 2-3), this amendment does little else to clarify the contentions. The heart of
24   the problem is the exhibits on which Blue Spike relies. While under the circumstances here it
25   could be appropriate to rely on marketing or advertising materials, *see France Telecom*, 2013 WL
26   1878912, at *3, the materials cited here fail to specify what product is being described or describe
27   a product other than the accused. As a result, the AICs do not disclose why Plaintiff believes
28   Adobe Auditude—the only product at issue—infringes the Patents-in-Suit. (*See, e.g.*, Dkt. Nos.

49-1 at 88.)

One key example is the "comparing" limitation, which is found in every claim and involves the fingerprinting function. Blue Spike cites to two exhibits—numbers 2 and 5—to support their contention that Adobe Auditude has such a "comparing" function, but neither of these exhibits discusses this technology in particular; rather, both refer to Auditude's products generally, and the exhibits date from 2008 when Auditude had both fingerprinting and ad insertion programs. Moreover, the exhibits focus heavily on the fingerprinting technology and include just a passing reference to ad insertion. (Dkt. No. 49-1 at 100-01 (describing content recognition then noting that "[o]nce the clip is identified Auditude will overlay an ad within the video").) When asked at oral argument to identify an exhibit that specifically discussed Adobe Auditude, the only product now at issue, Plaintiff's counsel cited Exhibit 1, but that document is an advertisement for Auditude Connect 2.0, a product that Blue Spike removed from its AICs and thus this lawsuit. (Dkt. No. 53-2 at 84-85.) Based on the vague materials that refer mostly to products that Blue Spike has actually removed from its ICs, Blue Spike has not adequately explained how Adobe Auditude infringes the Patents-in-Suit. Citing to exhibits that do not discuss the accused product is not sufficient.

Blue Spike does not offer any meaningful arguments to the contrary, and appears to concede that there may be lingering deficiencies in its AICs such that Adobe can renew its motion to strike in the near future. The Court sees no reason to delay the inevitable. Because the AICs fail to comply with the Patent Local Rules, they must be stricken. However, because it is not clear at this juncture that the deficiencies identified above cannot be cured, Blue Spike shall submit Second Amended Infringement Contentions—including a cover page and claims chart—by February 6, 2015. Leave is granted only as to Adobe Auditude. Plaintiff may not reassert products it voluntarily removed from its contentions.

**C. Doctrine of Equivalents**

Adobe further argues that Blue Spike failed to comply with Patent Local Rule 3-1(e), which requires it to state "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality." "The

11

doctrine of equivalents exists to prevent fraud on the patent" and not "to give a patentee a second shot at proving infringement" if it is not "literally present." *Creagri*, 2012 WL 5389775, at *6 (citation omitted). For that reason, the plaintiff must explain why the doctrine of equivalents might lead to infringement in the absence of direct infringement. *Id.*

Here, Blue Spike's AICs repeat the same boilerplate language for each of its contentions, noting in the alternative that "this element infringes directly or under the doctrine of equivalents." (*See, e.g.*, Dkt. No. 53-2 at 1-4.) Although, to be sure, Blue Spike has asserted separately that the doctrine applies to every single limitation, it provides no further description or explanation as to why it applies. Absent an explanation, such boilerplate language is not enough. *See Creagri*, 2012 WL 5389775, at *6. Despite Adobe having raised this defect in informal communications, a discovery letter to the Court, and a formally noticed motion, Blue Spike has done nothing to further explain the basis for these contentions. Accordingly, given Blue Spike's failure to take any action to amend this language or otherwise respond to Adobe's argument, the doctrine of equivalents contentions are stricken without leave to amend at this time. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006) (noting that, under Northern District of California Patent Local Rule 3-6, to obtain leave to amend, the moving party must "proceed with diligence in amending [the] contentions"); *see also Ardente, Inc. v. Shanley*, No. 07-4479 MHP, 2010 WL 546485, at *6 (N.D. Cal. Feb. 9, 2010) ("Plaintiff fails to respond to this argument and therefore concedes it through silence.").

### D. Priority Date

The same result follows with respect to Blue Spike's assertion of an open-ended priority date in the AICs. The Local Rules of the Court require a patentee to provide "[f]or any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled." Patent L.R. 3-1(f). For any earlier priority date identified pursuant to that rule, the patentee must produce documents "evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the . . . priority date identified[.]" Patent L.R. 3-2(b). This rule requires a patentee to assert a particular date—not a start date, end date, or date range. *See id.* Here, however, Blue Spike

12

asserts that "each asserted claim of the patents-in-suit [is] entitled to a priority date *no later than* September 7, 2000." (Dkt. No. 49-1 at 4 (emphasis added).) Adobe's concern is that Blue Spike may use the "no later than" language to assert a much earlier priority date further down the line in this litigation—as it appears Blue Spike has done in the related Texas cases. (*See* Dkt. No. 51 at 20-21 & n.5.) Blue Spike does not address this argument in its opposition, nor did it meaningfully respond to it during oral argument. Accordingly, the language "no later than" shall be stricken from the AICs without leave to amend. *See O2 Micro Int'l*, 467 F.3d at 1365-66; *see also Ardente*, 2010 WL 546485, at *6. The asserted priority date is September 7, 2000.

### E. Indirect Infringement

The same conclusion holds true for Blue Spike's claims of indirect infringement. Patent Local Rule 3-1(d) requires plaintiffs to disclose for each claim "any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement." It is well established in this District that boilerplate language asserting indirect infringement does not satisfy Patent Local Rule 3-1(d). *See, e.g.*, *France Telecom*, 2013 WL 1878912, at *4; *Creagri*, 2012 WL 5389775, at *5. Nor are "generic allegations" that recite the elements of or general theory behind indirect infringement sufficient under the local rule. *DCG Sys.*, 2012 WL 1309161, at *2. Instead, put simply, "Rule 3-1(d) requires facts." *France Telecom*, 2013 WL 1878912, at *5 (citations omitted); *see* Patent L.R. 3-1(d) (requiring a "description of the acts of the alleged indirect infringer" and stating that "the role of each party must be described"). For example, courts in this District have upheld indirect infringement contentions so long as the plaintiff discloses sufficient information to set forth its theory of infringement, identifies a particular product line that was sold to customers, and contends that the indirect infringement occurs when the customer uses the technology. *See, e.g.*, *DCG Sys.*, 2012 WL 1309161, at *2.

Here, assuming that the AICs incorporate the cover page of the ICs initially filed, the ICs cite to the FAC for the description of indirect infringement. (*See* Dkt. No. 49-1 at 3.) In the FAC, Blue Spike alleges that Adobe has been indirectly infringing "by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in

13

1 systems that fall within the scope of one of more claims of the [Patents-in-Suit]." (Dkt. No. 43
2 ¶¶ 34, 42, 50, 58, 66.) This general assertion of the elements of indirect infringement is plainly
3 insufficient. *See France Telecom*, 2013 WL 1878912, at *5 (rejecting the plaintiff's disclosure of
4 indirect infringement where it was merely a "bare-boned recitation of the essential elements of a
5 claim for indirect infringement"). Moreover, although Blue Spike included advertisements for
6 Adobe's products in support of its ICs, it neither specifies which particular product each
7 advertisement endorsed nor indicates which advertisement led to infringing behavior. Such
8 circumstances create only insufficient boilerplate allegations of indirect infringement. *See*
9 *Creagri*, 2012 WL 5389775, at *5 (finding indirect infringement contentions that stated defendant
10 advised third parties to use the products in an infringing manner but failed to identify which
11 advertisements led to infringing behavior was insufficient "boilerplate" language). Despite
12 Adobe's repeated informal requests and formal arguments about the insufficiency of the indirect
13 infringement contentions, Blue Spike does not address this argument in its opposition, nor did it
14 meaningfully respond to it during oral argument. Accordingly, the indirect infringement
15 contentions shall be stricken from the AICs without leave to amend. *See O2 Micro Int'l*, 467 F.3d
16 at 1365-66; *see also Ardente*, 2010 WL 546485, at *6.

17      **F.**     **Willful Infringement**

18 Nor is Blue Spike entitled to amend its insufficient claims of willful infringement. In this
19 District, willful infringement requires a patentee to "make out the barest factual assertion of
20 knowledge of an issued patent[.]" *IpVenture, Inc. v. Cellco P'ship*, No. C 10-04755 JSW, 2011
21 WL 207978, at *2 (N.D. Cal. Jan. 21, 2011). The allegations must assert that the accused
22 infringer had knowledge of the patent before the patent litigation began. *See Avocet Sports Tech.,*
23 *Inc. v. Garmin Int'l, Inc.*, No. C 11-04049 JW, 2012 WL 1030031, at *3 (N.D. Cal. Mar. 22, 2012)
24 (citations omitted); *see also In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007)
25 (noting that "when a complaint is filed, a patentee must have a good faith basis for alleging willful
26 infringement" and the willfulness allegation "must necessarily be grounded exclusively in the
27 accused infringer's pre-filing conduct"). A "bare recitation of the required elements for willful
28 infringement is insufficient" as is a "mere allegation of actual knowledge, without more[.]"

*Robert Bosch Healthcare Sys., Inc. v. Express MD Solutions, Inc.*, No. C 12-00068 JW, 2012 WL 2803617, at *3 (N.D. Cal. July 10, 2012) (internal quotation marks and citations omitted).

Here, in regard to willful infringement, Blue Spike's infringement contentions refer only to the allegations in the FAC. (*See* Dkt. No. 49-1 at 4.) The FAC, however, bases its willfulness argument on the fact that Adobe "has continued to infringe the [Patents-in-Suit] since receiving notice of their infringement, at least by way of their receiving notice of this lawsuit." (*See, e.g.*, Dkt. No. 43 ¶ 60.) Thus, the FAC does not include any facts to suggest that Adobe had any knowledge of the Patents-in-Suit prior to the filing of the instant complaint, which is insufficient to serve as the basis for willful infringement. *See, e.g.*, *Acovet Sports Tech.*, 2012 WL 1030031, at *3. Despite Adobe's repeated informal requests and formal arguments about the insufficiency of the willfulness contentions, Blue Spike does not address this argument in its opposition, nor did it meaningfully respond to it during oral argument. Accordingly, the claims of willfulness are stricken without leave to amend. *See O2 Micro Int'l*, 467 F.3d at 1365-66; *see also Ardente*, 2010 WL 546485, at *6.

## II.  DISCOVERY

When a plaintiff's infringement contentions are insufficient to meet the strictures of the Local Rules, courts in this District have stayed the defendant's discovery obligations, including the defendant's obligation to serve invalidity contentions, "[u]ntil [the] plaintiff meets the burden of providing infringement contentions compliant with Patent L.R. 3-1." *Infineon Techs. v. Volterra Semiconductor*, No. C 11-06239 (DMR), 2013 WL 322570, at *5 (N.D. Cal. Jan. 28, 2013) (citations omitted); *see also Shared Memory Graphics*, 2011 WL 3878388, at *7 (citation omitted); *Bender*, 2010 WL 1135762, at *2. Accordingly, the Court stays discovery, including Adobe's obligation to serve invalidity contentions, until 14 days after Blue Spike serves its revised infringement contentions.

## CONCLUSION

For the foregoing reasons, Blue Spike's Amended Infringement Contentions do not satisfy the Local Rules and must be stricken. Blue Spike's contentions of indirect and willful infringement, the doctrine of equivalents, and a priority date earlier than September 7, 2000 are

stricken without leave to amend.  The Court grants Blue Spike leave to amend the AICs solely to further specify and sufficiently support its claims of direct infringement by Adobe Auditude. Blue Spike shall submit its Second Amended Infringement Contentions ("SAICs") by February 6, 2015.  Discovery in this matter, including the deadline for Adobe to serve invalidity contentions, is stayed until 14 days after Blue Spike serves the SAICs.

**IT IS SO ORDERED**.

Dated:  January 23, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge