Jeffrey M. Fisher (SBN 155284)
jfisher@fbm.com
Eugene Y. Mar (SBN 227071)
emar@fbm.com
Daniel C. Callaway (SBN 262675)
dcallaway@fbm.com
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Phone: (415) 954-4400
Fax: (415) 954-4480

Attorneys for Defendant
ADOBE SYSTEMS INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ADOBE SYSTEMS INC.,<br><br>    Defendant. | Civil Action No.: 14-cv-1647-YGR (JSC)<br><br>**DEFENDANT ADOBE SYSTEMS INC.'S MOTION FOR ATTORNEY'S FEES**<br><br>Date:      July 21, 2015<br>Time:      2:00 p.m.<br>Dept:      Courtroom 1 – 4th Floor<br>Judge:     Honorable Yvonne Gonzalez |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

28386\4873936.3

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 21, 2015, at 2:00 p.m., or on such other date and time as the matter may be heard[1], before the Honorable Yvonne Gonzalez Rogers, Defendant Adobe Systems Inc. ("Adobe") shall and hereby does move the Court for an award of attorney's fees pursuant to 35 U.S.C §285, 28 U.S.C. §1927, Federal Rules of Civil Procedure 41 and 54(d), Civil Local Rule 1-4 and the Court's inherent power to impose sanctions.[2]  Adobe specifically moves for a declaration that this is an exceptional case and an order awarding attorney's fees jointly and severally against plaintiff Blue Spike, LLC ("Blue Spike") and plaintiff's counsel Garteiser Honea in the amount of $762,103.40.

This motion is based on the memorandum below, the supporting declarations and exhibits, all pleadings and papers on file in this action, such matters as are subject to judicial notice, and all other matters or arguments that may be presented in connection with this motion.

Dated: June 16, 2015

FARELLA BRAUN & MARTEL LLP


By:   /s/ Jeffrey M. Fisher
Jeffrey M. Fisher

Attorneys for Defendant
ADOBE SYSTEMS INC.

---

[1] On June 15, 2015, the parties filed a Stipulation seeking an Order to extend the briefing and hearing schedule on the motion such that Blue Spike's opposition will be due on July 10 and Adobe's reply will be due on July 21, with the hearing deferred until August 4, 2015 at 2:00 p.m. Dkt. No. 82.

[2] During meet and confer discussions relating to this motion, Blue Spike agreed to pay Adobe the costs for which it was seeking reimbursement in this action, totaling $ 7,282.92.  *See* Declaration of Jeffrey M. Fisher in Support of Adobe's Motion for Attorney's Fees ("Fisher Decl."), ¶ 2.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- i -

28386\4873936.3

1

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF ISSUES TO BE DECIDED ..................................................... 1

III.  STATEMENT OF FACTS .................................................................................... 1

  A.  Plaintiff Blue Spike LLC Is a Non-Practicing Entity Created a Few Months
      Before this Case Was Filed in an Attempt to Fabricate Venue in the Eastern
      District of Texas. ....................................................................................................... 2

  B.  Blue Spike Launches Its Assembly-Line Fashion Litigation Campaign with
      Boilerplate Complaints. ............................................................................................ 3

  C.  Blue Spike Wrongfully Sues Adobe .......................................................................... 3

  D.  Adobe Is Forced to File a Motion to Transfer Venue, and Blue Spike
      Opposes Adobe's Attempt to Stay the Litigation Pending the Disposition of
      the Transfer Request. ................................................................................................ 5

  E.  Blue Spike's Baseless Infringement Assertions Are Revealed Through its
      Inadequate Infringement Contentions and Admissions to the Court. ...................... 6

      1.  The Texas Infringement Contentions ............................................................. 6

      2.  The California Initial Case Management Conference ..................................... 7

      3.  Blue Spike Once Again Requests Source Code Prior to Serving
          Infringement Contentions ............................................................................... 8

      4.  Blue Spike Amends Its Complaint to Assert a Fifth Patent .......................... 8

      5.  The California Infringement Contentions ...................................................... 8

      6.  Blue Spike Refuses to Participate in the Joint Letter Brief Process
          Regarding Its Infringement Contentions Pursuant to Magistrate
          Judge Corley's Standing Order, and Instead Serves Discovery Upon
          Adobe ............................................................................................................. 9

      7.  In Lieu of Opposing Adobe's Motion to Strike Infringement
          Contentions, Blue Spike Serves "Amended Infringement
          Contentions" Without Seeking Leave of Court ............................................ 10

      8.  Magistrate Judge Corley Strikes Blue Spike's Amended
          Infringement Contentions ............................................................................ 11

  F.  Even After Receiving Magistrate Judge Corley's Order, Blue Spike
      Unnecessarily Delays the Resolution of this Case. ................................................ 12

      1.  Dismissal of Blue Spike's Claims ............................................................... 12

      2.  Blue Spike Continues To Delay, Drive Up Adobe's Litigation
          Expenses and Waste the Court's Time Concerning Entry of
          Judgment on Adobe's Noninfringement Counterclaims ............................. 13

IV.  LEGAL STANDARD ........................................................................................ 14

V.  THIS IS AN EXCEPTIONAL CASE AND ADOBE SHOULD BE
     REIMBURSED FOR UNNECESSARY FEES INCURRED IN DEFENDING
     AGAINST BLUE SPIKE'S BASELESS CLAIMS AND LITIGATION
     MISCONDUCT. ................................................................................................ 15

  A.  Blue Spike's Infringement Case Was Objectively Baseless ................................... 16

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- i -

28386\4873936.3

1.      Blue Spike's Infringement Contentions Revealed a Complete Lack of Basis to Bring this Lawsuit Against Adobe .......................................... 16

2.      Blue Spike's Repeated Request for Access to Source Code Prior to Serving Infringement Contentions Further Reveals It Lacked Basis to File this Lawsuit .................................................................................... 19

B.      Blue Spike's Counsel Committed Litigation Misconduct By Ignoring the Court's Local Rules and Needlessly Driving Up Litigation Costs and Consuming the Court's Resources. ....................................................... 19

1.      Blue Spike's Counsel Regularly Displayed a Wanton Disregard for the Court's Rules and Procedures ............................................... 20

2.      Blue Spike's Litigation Strategy Was Designed to Harass and Increase the Cost of Litigation .................................................... 21

3.      Blue Spike Made a Number of Frivolous Legal Arguments, Forcing Adobe to Incur Significant Legal Expense in Opposing Each of Them ....................................................................................... 22

4.      After Having Its Infringement Contentions Stricken, Blue Spike Has Prevented the Prompt Resolution of this Case .................................. 23

C.      An Award of Fees Is Appropriate Against Blue Spike's Counsel Pursuant to 28 U.S.C. §1927. .................................................................... 23

VI.      CONCLUSION .................................................................... 25

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- ii -

28386\4873936.3

# **TABLE OF AUTHORITIES**

**FEDERAL COURT CASES**

**Page**

*Baldwin Hardware Corp. v. Franksu Enter. Corp.,*
　78 F.3d 550 (Fed. Cir. 1996) ................................................................................... 25

*Chalumeau Power Sys. LLC v. Alcatel-Lucent USA Inc.,*
　No. CV 11-1175(RGA), 2014 WL 5814062 at *1-*3 (D. Del. Nov. 6, 2014) ..................... 22

*Chalumeau Power Sys. LLC v. Alcatel-Lucent,*
　No. 11-1175-RGA, 2014 WL 4675002 (D. Del. Sept. 12, 2014) ........................................ 18

*Commil USA, LLC v. Cisco Systems, Inc.,*
　135 S. Ct. 1920 (2015) ............................................................................... 1, 14-15

*Eon-Net LP v. Flagstar Bancorp.,*
　653 F.3d 1314 (Fed. Cir. 2011) ............................................................................ 15

*Gomez v. Vernon,*
　255 F.3d 1118 (9th Cir. 2001) ............................................................................. 15

*Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters., Inc.,*
　No. CV 08-7587 R (JWJx), 2009 WL 9137315, at *2-*3 (C.D. Cal. Dec. 14, 2009) ........... 25

*IPVX Patent Holdings, Inc. v. Voxernet,*
　No. 5:13-CV-01708 HRL, 2014 WL 5795545 (N.D. Cal. Nov. 6, 2014) ...................... 15, 18

*Kilopass Tech. Inc. v. Sidense Corp.,*
　No. C 10-02066 SI, 2014 WL 3956703 (N.D. Cal. Aug. 12, 2014) ................................. 15

*Logic Devices, Inc. v. Apple Inc.,*
　No. C 13-02943 WHA, 2014 WL 6844821 (N.D. Cal. Dec. 4, 2014) .......................... 17, 23

*Lyda v. Fremantlemedia N. Am., Inc.,*
　No. 10 CIV. 4773 DAB, 2012 WL 7828200 (S.D.N.Y. Aug. 9, 2012) ............................ 16

*MarcTec, LLC v. Johnson & Johnson,*
　664 F.3d 907 (Fed. Cir. 2012) ............................................................................ 14

*Octane Fitness v. ICON Health & Fitness, Inc.,*
　134 S. Ct. 1749 (2014) ................................................................................. *passim*

*Optimal Markets, Inc. v. FTI Consulting, Inc.,*
　No. 08-5765-SC, 2009 WL 1704665 (N.D. Cal. June 14, 2009) ................................... 15

*Yufa v. TSI Inc.,*
　No. 09–CV–01315–KAW, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014) .................... 15, 16

**FEDERAL STATUTORY AUTHORITIES**

28 U.S.C.
　§1404 ....................................................................................................... 5
　§1927 ................................................................................................. *passim*

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- iii -

28386\4873936.3

35 U.S.C.
    §285................................................................................................................. 1, 14, 20

**FEDERAL RULES AND REGULATIONS**

Fed. R. Civ. P.
    41(a)(2)...................................................................................................................... 15
    41................................................................................................................ 1, 13, 15, 20
    54(d) ........................................................................................................... 1, 15, 20

**STATE RULES AND REGULATIONS**

Local Rule
    1-4 ............................................................................................................... 1, 15, 20
    3-1(b)............................................................................................................... 21
    3-1 .................................................................................................... 8, 17, 18, 21
    3-6 .......................................................................................................... 10, 20

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- iv -

28386\4873936.3

1

## I.    **INTRODUCTION**

2    This action should never have been filed.  From the beginning, Adobe informed Blue

3   Spike that none of the accused Adobe advertising insertion products practiced the accused

4   functionality of digital fingerprinting.  After needlessly wasting Adobe's and the Court's

5   resources, Blue Spike finally dismissed this case after nearly three years of litigation because it

6   could not submit infringement contentions that complied with the Patent Local Rules of the

7   Northern District of California.  It did this because there is no evidence that the accused products

8   infringe.  Blue Spike and its counsel have litigated in such an unreasonable manner that the Court

9   has already recognized their actions "suggest bad faith," have been conducted in a manner that is

10   "the antithesis of diligent," and have been marked by a "disregard for the local rules" and

11   "gamesmanship."  Dkt. 57 at 8, n.4; Dkt. 74 at 4:10-5:3 & n.1; Dkt. 78 at 2.

12    In *Octane Fitness v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), the Supreme

13   Court discarded the over-rigid fee shifting test previously articulated by the Federal Circuit and

14   established a more liberal standard that supports an award of fees in cases based on "the

15   substantive strength [or lack thereof] of a party's litigating position . . . or the unreasonable

16   manner in which the case was litigated."  *Id.* at 1756.  The Supreme Court recently reiterated that

17   "district courts have the authority and responsibility to ensure frivolous cases . . . are dissuaded"

18   by awarding attorney's fees in exceptional cases and sanctioning attorneys for bringing such

19   frivolous suits.  *Commil USA, LLC v. Cisco Systems, Inc.*, 135 S. Ct. 1920, 1923 (2015).  The

20   Court should find that Blue Spike's conduct is unacceptable by awarding Adobe its attorney's

21   fees incurred in defending Blue Spike's frivolous claims in the amount of $762,103.40, as set

22   forth in the concurrently filed Declaration of Jeffrey M. Fisher.

23

## II.    **STATEMENT OF ISSUES TO BE DECIDED**

24    1.    Is Adobe entitled to recover the attorney's fees it incurred in defending against

25   Blue Spike's patent infringement suit under 35 U.S.C §285, 28 U.S.C. §1927, Fed. R. Civ. P. 41

26   & 54(d), Civil L.R. 1-4, and the Court's inherent sanctioning power?  If so, in what amount?

27

## III.    **STATEMENT OF FACTS**

28    Blue Spike and its counsel initiated this action without conducting an adequate pre-filing

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- 1 -

28386\4873936.3

investigation in the hopes of extorting a nuisance value settlement from Adobe.  After attempting to fabricate venue in the Eastern District of Texas, Blue Spike's infringement contentions were ultimately demonstrated to be entirely baseless.  Blue Spike nonetheless engaged in vexatious and oppressive behavior designed to increase Adobe's legal expenses and waste valuable resources of both Adobe and the Court.  *See, e.g.*, Fisher Decl. at Ex. 19 [1-22-15 Hearing Tr.] at 7:6-12 ("When somebody moves to strike it or when they send you a letter and do it, the thing to do is to then withdraw it; not ignore it or not repeat it again. That just wastes my time and that wastes their time and the contentions are there to try to streamline things. And it's not appreciated when you just essentially ignore it and just repeat it again and don't do that.").  To assist the Court in its consideration of this motion, Adobe has prepared a timeline reflecting the significant events that occurred during the course of this action, which is attached as Exhibit A to the concurrently filed Declaration of Eugene Y. Mar ("Mar Decl.").   Blue Spike's meritless litigation and bad-faith conduct warrants a finding that this case is exceptional under *Octane Fitness* and a ruling that Blue Spike and its counsel must pay Adobe's fees.

### A. Plaintiff Blue Spike LLC Is a Non-Practicing Entity Created a Few Months Before this Case Was Filed in an Attempt to Fabricate Venue in the Eastern District of Texas.

In a transparent attempt to fabricate venue in the Eastern District of Texas, named inventor and CEO Scott Moskowitz created Blue Spike, LLC in Tyler, Texas, as a holding company for the asserted patents in May 2012.  *See* Fisher Decl. at Ex. 7 [Articles of Incorporation of Blue Spike, LLC].  In August 2012, Mr. Moskowitz assigned the asserted patents from his Florida-based company Blue Spike Inc. to the newly created Blue Spike, LLC in Texas. *See* Fisher Decl. at Ex. 8 [Patent Assignment Details].  Just a few days later, Blue Spike filed suit against Adobe in the Eastern District of Texas.  There is no indication, however, that any Blue Spike entity had ever conducted business within the Eastern District of Texas or maintained any employees in Tyler (including Mr. Moskowitz) at the time this lawsuit was filed.[3]

---

[3] Although one of Blue Spike's primary arguments opposing transfer was that Mr. Moskowitz lived in Tyler, Texas and that requiring him to travel to California would "inflict pain and risk serious medical harm" (Fisher Decl, Ex. 11 [Moskowitz Decl.]), the details of Mr. Moskowitz's residence and business operations in Florida are provided in Adobe's Motion Transfer Venue to

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- 2 -

28386\4873936.3

**B.     Blue Spike Launches Its Assembly-Line Fashion Litigation Campaign with Boilerplate Complaints.**

Between August and October, 2012, Blue Spike filed 56 lawsuits in the Eastern District of Texas, including one against Adobe.  Fisher Decl., ¶ 27; Ex. 21 [List of Blue Spike cases].  These assembly-line style lawsuits used the same boilerplate complaint, changing only the name of the defendant and the accused products.  *Id.*, ¶ 27.  Blue Spike's litigation campaign has now ballooned to over 100 cases, including litigation against the United States government.  *Id.*; Ex. 21 [List of Blue Spike cases].  To date, while Blue Spike has extracted payments from some of its litigation targets, the settlements that Adobe is aware of[4] have been for substantially less than the cost of litigation.  Fisher Decl., ¶ 28.

**C.     Blue Spike Wrongfully Sues Adobe.**

Blue Spike's original complaint against Adobe asserted four patents and described them as "encompassing techniques, among others, also known as 'signal abstracting,' 'acoustic fingerprinting,' or 'robust hash functions.'"  Dkt. No. 1 [Complaint], at ¶ 21.  However, the accused products identified in Blue Spike's complaint—Adobe Auditude, Project Primetime, Auditude's Connect 2.0, and Auditude's Connect Platform software, systems, applications, and technology—were current Adobe advertising insertion (commonly called "ad insertion") products, which ***did not employ any fingerprinting technology***.  Adobe counterclaimed for declaratory judgment of non-infringement and invalidity of each of the four asserted patents.  *See* Fisher Decl. at Ex. 3 [Adobe's Answer to the initial Complaint in the Texas case] at 25-30.

After serving the complaint on Adobe, Blue Spike contacted Adobe to initiate settlement discussions.  Although the complaint named four Adobe ad insertion products or services, Blue Spike's settlement discussions focused on a separate ***digital fingerprinting technology*** that had

the Northern District of California filed in the Texas case.  Fisher Decl, Ex. 4.  [Motion to Transfer] at 4-7.  The Texas Court ultimately granted the transfer motion and failed to give special consideration to Mr. Moskowitz's alleged travel limitations, noting he had not submitted any medical documentation to support this claim.  Dkt. 14 at 7.

[4] In response to Adobe's request in connection with this briefing, Blue Spike has refused to produce licenses or settlement agreements from all of the 100+ lawsuits involving these same asserted patents.  Fisher Decl., ¶ 28.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- 3 -

28386\4873936.3

been developed by an independent company called Auditude Inc.[5]  *See* Fisher Decl., ¶ 29 and Ex. 5 [Helfand Decl. ISO Transfer], ¶ 10; Mar Decl., ¶ 3.  Specifically, Auditude developed two technologies:  digital fingerprinting technology and ad insertion technology.  In December 2010, Auditude divested and transferred the digital fingerprinting technology to a newly formed spinoff company called IntoNow.  Fisher Decl., Ex. 5 [Helfand Decl. ISO Transfer], ¶ 6.  As part of that divestiture, the intellectual property, the know-how, the source code files, and the personnel knowledgeable about Auditude's digital fingerprinting technology all went to IntoNow.  *Id.*, ¶ 6.  In April 2011, Yahoo (not Adobe) acquired IntoNow.  *Id.*, ¶ 7.[6]  Several months later, Adobe purchased what remained of Auditude, namely the ad insertion technology.  Adobe informed Blue Spike by as early as November 2012 that Adobe never acquired the Auditude digital fingerprinting technology and that the accused products related to the separate ad insertion technology and did not employ fingerprinting technology.  *Id.*, ¶ 5; Mar Decl., ¶ 3.

Notably, Blue Spike had also sued Yahoo as part of its litigation campaign, and named IntoNow as one of the accused products in its complaint against Yahoo.  *See* Fisher Decl., Ex. 1 [Complaint from Yahoo case].  After learning from Adobe that Auditude's digital fingerprinting technology was the IntoNow technology owned by Yahoo, Blue Spike entered into a licensee agreement and settlement with Yahoo in March 2013.  Fisher Decl., ¶ 19.  Although it had settled with Yahoo, Blue Spike continued its litigation against Adobe for ***two additional years***.

---

[5] In an attempt to clarify the confusion surrounding which technology—digital fingerprinting or the unrelated ad insertion—was accused of infringement, Adobe requested that Blue Spike provide claim charts to Adobe during settlement negotiations. Fisher Decl., ¶ 25.  Blue Spike never provided any claim charts during those negotiations.  *Id.*  It is now apparent why Blue Spike chose to withhold the claim charts because, as Magistrate Judge Corley found in striking Blue Spike's infringement contentions, the claim charts fail to provide any notice of what functionalities were accused of infringement or how the asserted claims map to accused functionalities.  *See* Dkt. 57.

[6] After Adobe acquired Auditude in November 2011, Adobe briefly serviced a few legacy Auditude digital fingerprinting customers as an IntoNow licensee before permanently shutting down the fingerprinting services in January 2012—months before this action was filed.  Fisher Decl. at Ex. 5 [Helfand Decl. ISO Transfer], ¶ 9.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)                    - 4 -                    28386\4873936.3

1

2

    **D.**      **Adobe Is Forced to File a Motion to Transfer Venue, and Blue Spike Opposes Adobe's Attempt to Stay the Litigation Pending the Disposition of the Transfer Request.**

3

4

5

6

7

8

9

10

11

12

      Given that Blue Spike had no real connection with the Eastern District of Texas, that the former Auditude personnel knowledgeable about the digital fingerprinting technology had either joined Yahoo as part of the IntoNow acquisition or dispersed to other technology companies in California, and that the completely separate ad insertion products Blue Spike named in the complaint were all developed and maintained by Adobe out of its headquarters in San Jose and San Francisco (*see* Fisher Decl. at Ex. 5 [Helfand Decl. ISO Mtn. To Transfer, ¶¶ 6 & 8]; and Ex. 6 [Helfand Decl. ISO Reply re Mtn. to Transfer], ¶¶ 3-6, 10), Adobe asked Blue Spike if it was amenable to transferring the case to the Northern District of California.  *See* Dkt. 905 in Texas case.  Blue Spike opposed the change of venue, forcing Adobe to file a motion to transfer venue pursuant to 28 U.S.C §1404 in August 2013.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

      After the briefing was completed and while awaiting decision from the Texas Court, Adobe (along with other Texas defendants who had likewise sought transfer) approached Blue Spike to stipulate to a stay of all proceedings pending the Texas Court's ruling on Adobe's transfer motion.  Mar Decl., ¶ 4.  Blue Spike refused, forcing Adobe and the other Texas defendants to file a joint motion seeking a stay of all proceedings.  *See* Fisher Decl., Exhs. 9 and 10 [Defendants' 2/11/2014 Motion to Stay and Adobe's Joinder to that motion from the Texas case].  Blue Spike's refusal to agree to a stay forced Adobe to continue to incur substantial expenses to litigate this action in the Eastern District of Texas, including the review and analysis of infringement contentions for 114 claims, the preparation of invalidity contentions for 114 claims, the preparations and attendance at the Rule 26(f) conference and the Case Management Conference in Texas, the factual investigation into both the digital fingerprinting and the ad insertion technologies, and the coordination with the joint defense group of 80+ defendants, and the investigation into a potential license defense. Fisher Decl., ¶ 22; Mar Decl., ¶ 4.  On March 13, 2014, the Texas Court granted Adobe's motion and transferred the case against Adobe (along with several other defendants) to this Court.  *See* Dkt. No. 14.

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- 5 -

28386\4873936.3

**E.     Blue Spike's Baseless Infringement Assertions Are Revealed Through its
Inadequate Infringement Contentions and Admissions to the Court.**

1.     The Texas Infringement Contentions

On February 26, 2014, while this case was still pending in the Eastern District of Texas,
Blue Spike served its Infringement Contentions ("Texas Contentions").  Blue Spike's claim charts
asserted that the four Adobe ad insertion products named in the complaint infringed every single
claim across four patents, totaling 114 claims.  Fisher Decl. Ex. 12 [Texas 2/26/14 Infringement
Contentions].  Despite identifying Adobe's ad insertion products, Blue Spike's claim chart relied
on materials describing the unrelated Auditude digital fingerprinting technology (which Blue
Spike was on notice was owned by Yahoo and with whom Blue Spike settled and entered into a
license agreement).

Besides the sheer number of claims,[7] the Texas Contentions contained glaring deficiencies
that were detailed in a letter Adobe sent to Blue Spike on April 2, 2014.  Fisher Decl., Ex. 14
[Fisher 4/2/14 Letter to R. Garteiser].  As explained in detail in the letter, the key deficiencies
included the following:

- a failure to provide a separate claim chart for each accused product;
- reliance on nothing more than "information and belief" for limitations in 113 of the 114
  asserted claims;
- reliance on exhibits that bear no relevance to the accused technology; and
- an inaccurate mishmash of third-party blog posts and website printouts seeking to
  improperly combine elements from the Auditude digital fingerprinting technology with
  the completely unrelated Adobe online ad insertion technology.

Blue Spike ignored this letter.  Adobe followed up on May 1, 2014, again requesting that Blue
Spike remedy the numerous deficiencies in its infringement contentions and noting that Blue
Spike's continued failure to articulate its pre-filing basis or provide an adequate set of
infringement contentions exemplified how this case was "exceptional" under *Octane Fitness*.  *Id.*,

---

[7] At the March 6, 2014 Case Management Conference in Texas, Adobe raised a concern about
Blue Spike's approach of asserting all 114 claims.  The Texas Court agreed that approach was
untenable and ordered Blue Spike to limit its preliminary election of asserted claims to 32 claims
within 30 days with a final reduction to a total of 16 claims after the *Markman* hearing.  *See*
Fisher Decl. at Ex. 13 [Scheduling and Discovery Order in Texas Case] at 8-9.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)                          - 6 -                          28386\4873936.3

1    Ex. 15 [Fisher 5/1/14 Letter to R. Garteiser].  Blue Spike ignored this letter as well.

2                    2.       The California Initial Case Management Conference

3         Following transfer of this action to this District, as the Initial Case Management

4    Conference in this Court neared in July 2014, Blue Spike began to further reveal its lack of pre-

5    filing investigation by repeatedly requesting the source code for the accused products.  In the

6    Joint CMC Statement, Blue Spike stated that it would only be "amenable to reducing the number

7    of asserted claims four weeks *after Defendants have all provided the source code for the*

8    *accused functionality.*"  Dkt. 34, at 14:26-15:4 (emphasis added).   At the CMC, Blue Spike

9    requested access to source code and candidly admitted it had no basis for bringing this lawsuit:

10        MR. GARTEISER: … If you want really good patent infringement contentions,
          please help us see the source code, and that's what we have been doing.
11

12        THE COURT: You want the gem so that you could say what the problem is?

13        MR. GARTEISER: Pardon?

14        THE COURT: You want their source code so you can tell them what the problem
          is.
15
          MR. GARTEISER: No, your Honor.  ***We want the source code to see if there's***
16        ***an issue at all*** and whether we spend a lot of litigation money.  We are not asking
          anyone to pull emails at this stage.  ***We just want to see if what we think they do,***
17        ***based on information and belief***, and what they tell customers, then that's what
          we want to do.  ***Otherwise, we are not sure even how you would get around that***
18        ***issue.***

19   Fisher Decl. at Ex. 22 [7-28-14 CMC Transcript] at 19 (emphasis added).[8]

20        The Court refused to provide Blue Spike with source code and further warned Blue Spike

21   that its infringement contentions needed to comply with this Court's Patent Local Rules, not the

22   rules from Texas:

23        THE COURT:  If that means that you have to redo the infringement contentions,
          then so be it … [Y]ou're following our rules, not Texas' rules.
24
          MR. GARTEISER: I understand, Your Honor.
25
     *Id.* at 15.  The Court also pressed Blue Spike on the number of asserted claims, leading Blue
26

     _____

27   [8] As the Court may recall, in response to the Court's questions at the CMC, Blue Spike could not
     even articulate what the asserted patents were about and which claims were asserted.  Fisher Decl.
28   at Ex. 22 [7-28-2014 CMC Transcript] at 6-11.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)                    - 7 -                          28386\4873936.3

Spike to finally agree it would not assert all 114 claims again "*because that was more of a kitchen sink approach*, and we have since narrowed our infringement contentions down." *Id.* at 18 (emphasis added).

### 3. Blue Spike Once Again Requests Source Code Prior to Serving Infringement Contentions.

Undeterred by the Court's indication that Blue Spike should not have access to source code prior to providing adequate infringement contentions, Blue Spike nonetheless requested a source code inspection from Adobe on September 5, 2014, "in order to provide source code references in Blue Spike's preliminary infringement contentions." Fisher Decl., Ex. 16 [9-5-2014 Anderson email to Adobe]. This request was all the more remarkable because Adobe had informed Blue Spike seven months earlier leading up to the Rule 26(f) conference in Texas that Adobe never had the source code for the Auditude digital fingerprinting technology because that technology was owned and operated by Yahoo. *Id.*, Ex. 23 [2/4/2014 E. Mar letter to C. Honea]. After Adobe objected to Blue Spike's request, Blue Spike responded with baseless accusations of spoliation, threats of sanctions, and emailed an order from the *Apple v. Samsung* litigation regarding adverse inference jury instructions. Fisher Decl., Exs. 24 & 25 [9-10-2014 Garteiser emails to E. Mar at 12:45 pm & 9:14 pm].

### 4. Blue Spike Amends Its Complaint to Assert a Fifth Patent

Despite knowing that it could not provide adequate infringement contentions, Blue Spike next raised the litigation stakes by amending its complaint on September 15, 2014 to assert a *fifth* patent against Adobe. Dkt. 43. Blue Spike again identified Adobe Auditude, Project Primetime, Auditude's Connect 2.0 and Auditude's Connect Platform—Adobe's ad insertion services—as the accused products in its Amended Complaint, but continued to also reference fingerprinting technology. *Id.* at ¶ 21 & ¶ 27. Simply put, notwithstanding being put on notice of the facts on multiple occasions, Blue Spike was continuing to accuse products of infringing patents covering technology that those products did not contain.

### 5. The California Infringement Contentions

On September 26, 2014, Blue Spike served its Patent Local Rule 3-1 Infringement

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- 8 -

28386\4873936.3

Contentions ("California Contentions").  The California Contentions continued to accuse the four

Adobe ad insertion products of infringement while repeatedly relying on materials pertaining to

the unrelated Auditude digital fingerprinting technology.  They also contained many of the same

defects Adobe had pointed out with respect to the Texas Contentions.  Adobe wrote to Blue Spike

on October 23, 2014, noting that Blue Spike's contentions remained deficient and in fact suffered

from many of the same defects as the Texas Contentions, including:

- failure to provide a claim chart for each accused product;

- reliance on exhibits that do not refer to the accused products;

- an inaccurate mishmash of third-party blog posts and website printouts seeking to improperly combine elements from the Auditude digital fingerprinting technology with the completely unrelated Adobe online ad insertion technology.

- failure to show any evidence of infringement for numerous limitations;

- failure to include any contentions under the doctrine of equivalents despite claiming that Adobe infringes under that doctrine;

- improperly claiming a priority date "no later than September 7, 2000"; and

- failing to provide any description or support for its indirect and willful infringement claims.

Fisher Decl. Ex. 18 [10/23/2014 D. Callaway letter to R. Garteiser].  Blue Spike ignored this

letter as well, prompting Adobe to follow up on November 6, 2014 to set up a meet-and-confer in

an effort to comply with the November 14 deadline to complete meet and confer discussions

relating to Blue Spike's contentions.  *Id.*, Ex. 26 [11/6/2014 D. Callaway email to R. Garteiser].

What followed from Blue Spike was yet another round of baseless accusations of spoliation.  *Id.*,

Ex. 26 [11/6/2014 R. Garteiser emails to D. Callaway of 11/6/2014 and 11/7/2014].

A meet-and-confer took place on November 12, 2014, during which Blue Spike refused to

amend its contentions to address the deficiencies, concluding with Blue Spike inviting Adobe to

file a motion to strike.  Fisher Decl. Ex. 27 [11/12/2014 R. Garteiser e-mail to D. Callaway].

> 6.  Blue Spike Refuses to Participate in the Joint Letter Brief Process Regarding Its Infringement Contentions Pursuant to Magistrate Judge Corley's Standing Order, and Instead Serves Discovery Upon Adobe.

Pursuant to Magistrate Judge Corley's Standing Order, parties must submit a joint letter

brief regarding any discovery issues.  Adobe delivered a draft joint letter concerning the deficient

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- 9 -

28386\4873936.3

infringement contentions to Blue Spike on November 21, 2014.  Fisher Decl. Ex. 28.  Following

its now familiar pattern, Blue Spike again failed to respond, forcing Adobe to conduct a series of

follow up requests.  *Id.*, Ex. 29.  Over the next few weeks, Blue Spike never committed to

preparing its portion of the joint letter brief.  Instead, Blue Spike served requests for production

for documents along with four 30(b)(1) deposition notices seeking a wide range of discovery,

intending "to understand the 'fingerprinting' technology you mention and how that relates to

Adobe's signal recognition software that is accused of infringement in this litigation."  *Id.*, Ex. 29

[12/1 R. Garteiser email] & Ex. 30 [Blue Spike's discovery].  The discovery included requests for

the production of source code and other technical materials even though Blue Spike had not

satisfied its obligation to provide adequate infringement contentions, and notwithstanding the

Court's comments at the Initial CMC.

On December 2, 2014, after weeks of pursuing Blue Spike to commit to the joint letter

process, Adobe filed its own letter brief seeking to strike Blue Spike's infringement contentions.

Dkt. 49.  Once again, Blue Spike did not respond.  Magistrate Judge Corley granted Adobe's

request to file a fully noticed motion for this matter by December 15, 2014.  Dkt. 50.

7.    In Lieu of Opposing Adobe's Motion to Strike Infringement Contentions,
      Blue Spike Serves "Amended Infringement Contentions" Without Seeking
      Leave of Court.

On December 29, 2014, without first seeking leave from the Court as required under

Patent Local Rule 3-6, Blue Spike filed "Amended Preliminary Infringement Contentions" in

response to Adobe's Motion to Strike in hopes of "mooting" the motion.  Dkt. 53.  In the

amended contentions, Blue Spike simply dropped all of the previously accused ad insertion

products referenced both in its initial complaint and its amended complaint and instead named a

new accused product called "Adobe's Auditude Video Advertising Platform."  Dkt. 53.  Although

Blue Spike had changed the accused products, its amended contentions failed to address ***any*** of

the deficiencies identified in Adobe's Motion to Strike.  *See generally* Dkt. 54 [Adobe's Reply

ISO Motion to Strike].  The Court noted that this maneuver and Blue Spike's "continued delay

and refusal to amend its ICs [were], perhaps, motivated by gamesmanship."  Dkt. 57, n.4.  It

clearly was designed to avoid judicial scrutiny of its deficient contentions and prolong this action.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- 10 -

28386\4873936.3

At the January 22, 2015 hearing on Adobe's Motion to Strike, Magistrate Judge Corley repeatedly expressed displeasure with Blue Spike's litigation tactics, including its failure to meaningfully respond to Adobe's letters or even the motion itself:

- "When somebody moves to strike it or when they send you a letter and do it, the thing to do is to then withdraw it; not ignore it or not repeat it again. That just wastes my time and that wastes their time and the contentions are there to try to streamline things. And it's not appreciated when you just essentially ignore it and just repeat it again and don't do that." Fisher Decl., Ex. 19 [1-22-15 Hearing Tr.] at 7:6-12.

- "What I'm trying to get out of you is why you didn't take their motion to strike seriously and address it as opposed to having me have to address those issues. That's what I'm trying to get at. And I guess the answer is there is no answer to that. In other words, you're here now. Either you deal with the rules here or don't or withdraw this suit, but you have to comply with the rules here." *Id.* at 8:13-19.

- "And, you know, those emails know—if there's a problem with your [contentions], you amend them and you don't say no, I'll amend them after you give the discovery. That's just not the way it works in this District and that's where you are." *Id.* at 19:4-9.

Magistrate Judge Corley also questioned Blue Spike's counsel repeatedly on what basis it had to assert that any of Adobe's Auditude products, including the Video Advertising Platform named in the amended contentions, employed fingerprinting or practiced any part of the asserted patents. *Id.* at 4:19-5:13; 10:19-11:20; 12:24-13:5; 14:1-12; & 16:9-20.  Blue Spike's counsel could not provide meaningful answers to the Court's questions.  *Id.*

        8.     Magistrate Judge Corley Strikes Blue Spike's Amended Infringement Contentions.

On January 26, 2015, Magistrate Judge Corley issued an order granting Adobe's Motion to Strike Blue Spike's Infringement Contentions and staying discovery. Dkt. 57.  The Court struck without leave to amend Blue Spike's indirect and willful infringement allegations and assertions under the doctrine of equivalents, and held that Blue Spike could not assert an earlier priority date than September 7, 2000.  Additionally, the Court struck Blue Spike's direct infringement allegations and gave it leave to amend as to the one product identified in the amended contentions, precluding it from reasserting the products that had been dropped.  Dkt. 57.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- 11 -

28386\4873936.3

**F.     Even After Receiving Magistrate Judge Corley's Order, Blue Spike Unnecessarily Delays the Resolution of this Case.**

Despite Magistrate Judge Corley's grant of leave to amend its infringement contentions, Blue Spike never served amended infringement contentions because there is no evidence to support them.  Instead, Blue Spike sought to dismiss its claims *without prejudice* in a transparent attempt to avoid the impact of Magistrate Judge Corley's Order, live to litigate another day against Adobe, and maintain a cloud of uncertainty over Adobe's products in the hopes of extorting a settlement.

1.     Dismissal of Blue Spike's Claims

As the February 6, 2015 deadline to serve new infringement contentions neared, on a call with the Court's ADR Unit on February 2 and a follow up discussion on February 3, Blue Spike threatened to "double down" on the litigation while also exploring whether Adobe would agree to allow Blue Spike to dismiss the litigation without prejudice.  Fisher Decl., ¶ 32; Dkt. 77-1, ¶ 6. During the course of the February 3 discussion, Adobe inquired about whether Blue Spike would provide a covenant not to sue, which it refused to do.  *Id.*

On February 6, instead of serving new amended contentions as required by Magistrate Judge Corley's Order, Blue Spike filed a motion seeking voluntary dismissal of its claims without prejudice.  Dkt. No. 61.  In the last sentence of its motion, without any explanation whatsoever, Blue Spike further asked the Court to dismiss Adobe's counterclaims for non-infringement and invalidity.  *Id.* at 5:16-17.  The sole justification Blue Spike offered for its motion was its preposterous contention that it "just received instruction" that it would have to follow the Local Rules of this District when the Rules themselves require compliance and the Court expressly advised Blue Spike of this requirement at the Initial CMC.[9]

After the parties completed the briefing, the Court dismissed all of Blue Spike's claims *with* prejudice.  Dkt. 74.  The Court specifically noted that "the plaintiff's motion, filed in lieu of

---

[9] This contention is manifestly false as the Court instructed Blue Spike to follow the Court's Local Rules with regards to preparing its infringement contentions at the Initial CMC, and counsel for Blue Spike acknowledged this requirement.  Fisher Decl. Ex. 22 at 15 [Transcript of 7/28/2014 CMC Hearing].

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- 12 -

28386\4873936.3

complying with the deadline for amending its infringement contentions, is a transparent attempt to circumvent the impact of Judge Corley's ruling" and that it was "an obvious effort by the plaintiff to escape the inevitable consequences of its own failure." *Id.* at 4:10-12 & 5:3-4. Although the Court declined to make a fee award under Rule 41 at that time because Adobe's counterclaims remained pending, the Court recognized that Blue Spike's conduct had required Adobe to engage in "substantial motion practice," criticized Blue Spike for "seek[ing] to avoid the imminent consequences of its failure to comply with the local rules, despite previous admonishment by the Court to do so" and found that "plaintiff's conduct in connection with this case has been the antithesis of diligent." *Id.* at 4-5. The Court further noted that "the defendant persuasively argues the Court should enter judgment on its counterclaims of non-infringement in light of the facts outlined above." Dkt. 74, 5:13-15. The Court, therefore, ordered Blue Spike to show cause why judgment on Adobe's noninfringement counterclaims should not be entered. *Id.*

2.     Blue Spike Continues To Delay, Drive Up Adobe's Litigation Expenses and Waste the Court's Time Concerning Entry of Judgment on Adobe's Noninfringement Counterclaims

After receiving the Court's May 4 Order, counsel for Adobe and Blue Spike conferred to determine whether Blue Spike would be objecting to entry of judgment on Adobe's non-infringement counterclaims. Although Blue Spike indicated on the initial call that it would file a "notice of non-objection" to the entry of judgment (Fisher Decl., ¶ 34), after numerous attempts by Adobe's counsel to follow up (which were—once again—ignored), Blue Spike finally responded on the day any objection to the Order to Show Cause was due, stating that it had changed its mind and would be opposing the entry of judgment on Adobe's counterclaims. *Id.* This forced Adobe to prepare and file yet another response to Blue Spike's needless motion practice (Dkt. No. 77), and for the Court to have to prepare and enter yet another Order. On May 20, 2015, the Court overruled Blue Spike's frivolous objections and ordered the parties to submit an agreed-upon form of judgment. Dkt. 78. In its Order, the Court rejected Blue Spike's argument that Adobe's counterclaims were impermissibly broad because they "mirror the breadth of plaintiff's own infringement claims, ***and thus this argument suggests bad faith by the plaintiff either now or at the outset of the case***." *Id.* at 2 (emphasis added).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- 13 -

28386\4873936.3

1   Notwithstanding the Court's Order that the parties submit an agreed-upon form of

2   judgment, Blue Spike continued to needlessly refuse to cooperate and run up Adobe's expenses.

3   Specifically, after the May 20 Order, Blue Spike informed Adobe that it would seek to file a

4   "motion for clarification," on the grounds that the Court somehow misunderstood the effect of

5   Magistrate Judge Corley's Order striking Blue Spike's infringement contentions.  Fisher Decl., ¶

6   34, Ex. 20 [5/21/2015 & 5/22/2015 R. Garteiser emails to J. Fisher].  Only on the day the

7   proposed judgment was due did Blue Spike reverse course and ultimately agree to not oppose

8   entry of judgment.  *Id.* Ex. 31 [Garteiser emails of 5/26/15 & 5/28/15].  On June 2, 2015, after

9   nearly three years of litigation, the Court entered final judgment in favor of Adobe, declaring that

10  Adobe did not infringe any of the five asserted patents.  Dkt. No. 80.

11  **IV.   LEGAL STANDARD**

12  One year ago, the Supreme Court enacted a sea change in the law on attorney's fees in

13  patent cases by forcefully rejecting the Federal Circuit's "overly rigid" standard for finding a case

14  exceptional under 35 U.S.C. §285. *Octane Fitness*, 134 S.Ct. at 1756.  The Supreme Court held

15  that an "exceptional case" is "simply one that stands out from others with respect to the

16  substantive strength of a party's litigating position . . . or the unreasonable manner in which the

17  case was litigated." *Id*.  The Supreme Court further rejected the "clear and convincing" standard

18  for proving an exceptional case; instead, "Section 285 demands a simple discretionary inquiry; it

19  imposes no specific evidentiary burden, much less such a high one." *Id*. at 1758.  "A case

20  presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself

21  apart from mine-run cases to warrant a fee award." *Id.* at 1757.  The District Court should

22  consider the totality of the circumstances in awarding fees and be guided by factors such as

23  "frivolousness, motivation, objective unreasonableness (both in the factual and legal components

24  of the case) and the need in particular circumstances to advance considerations of compensation

25  and deterrence." *Id.* at 1756 & n.6.  Other factors may include adequacy of pre-filing

26  investigation and litigation behavior. *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 916

27  (Fed. Cir. 2012).  Most recently, the Supreme Court reiterated in *Commil USA, LLC v. Cisco*

28  *Systems Inc.* that "district courts have the authority and responsibility to ensure frivolous cases are

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- 14 -

28386\4873936.3

1   dissuaded" by awarding attorney's fees in exceptional cases and sanctioning attorneys for

2   bringing such frivolous suits.  135 S. Ct. at 1923.

3       28 U.S.C. §1927 permits sanctions to be imposed on an attorney who "multiplies the

4   proceedings in any case unreasonably and vexatiously."  Under the Court's inherent sanctioning

5   powers, sanctions may be imposed on the attorneys and/or the party.  In the Ninth Circuit,

6   "sanctions are available when recklessness is 'combined with an additional factor such as

7   frivolousness, harassment, or an improper purpose.'"  *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th

8   Cir. 2001) (internal citation omitted).  As the Court noted in its May 4, 2015 Order, fees may also

9   be awarded under Fed. R. Civ. P. 41 as a condition of dismissal.  *Id*. at 5 ("A defendant is entitled

10  only to recover, as a condition of dismissal under Fed. R. Civ. P. 41(a)(2), attorneys fees or costs

11  for work which is not useful in continuing litigation between the parties.") (*quoting Optimal

12  Markets, Inc. v. FTI Consulting, Inc., No. 08-5765-SC*, 2009 WL 1704665, at *4 (N.D. Cal. June

13  14, 2009).  Federal Rule of Civil Procedure 54(d) further permits attorney's fees to be awarded to

14  the prevailing party.  Finally, Civil L.R. 1-4 states that "[f]ailure by counsel or a party to comply

15  with any duly promulgated local rule or any Federal Rule may be a ground for imposition of any

16  authorized sanction."  Sanctions are warranted here pursuant to these provisions.

17  **V.      THIS IS AN EXCEPTIONAL CASE AND ADOBE SHOULD BE REIMBURSED
           FOR UNNECESSARY FEES INCURRED IN DEFENDING AGAINST BLUE
18         SPIKE'S BASELESS CLAIMS AND LITIGATION MISCONDUCT.**

19      Blue Spike's case has been meritless from the outset, brought without Blue Spike having

20  conducted an adequate pre-filing investigation in the hopes that Adobe would settle rather than

21  defend itself.  Following the Supreme Court's directive, courts across the country are rejecting

22  such tactics.  *See, e.g.*, *Eon-Net LP v. Flagstar Bancorp.*, 653 F.3d 1314 (Fed. Cir. 2011); *IPVX

23  Patent Holdings, Inc. v. Voxernet*, No. 5:13-CV-01708 HRL, 2014 WL 5795545 (N.D. Cal. Nov.

24  6, 2014); *Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2014 WL 3956703 (N.D. Cal.

25  Aug. 12, 2014); *Yufa v.TSI Inc.*, No. 09-CV-01315 -KAW, 2014 WL 4071902 (N.D. Cal. Aug.

26  14, 2014).  Blue Spike's failure to conduct an adequate pre-filing investigation, its constant

27  "shifting sands" approach to infringement contentions, its wanton disregard for this Court's rules,

28  and its constant attempts to drive up Adobe's litigation expenses all justify a finding that this is an

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- 15 -

28386\4873936.3

1   exceptional case and that Adobe should be reimbursed for its attorney's fees.

2         **A.**    **<u>Blue Spike's Infringement Case Was Objectively Baseless.</u>**

3             **1.**    Blue Spike's Infringement Contentions Revealed a Complete Lack of Basis
4                   to Bring this Lawsuit Against Adobe.

5         In the original and the amended complaint, Blue Spike asserted that four of Adobe's ad

6   insertion products and services—Adobe Auditude, Project Primetime, Auditude's Connect

7   Platform, and Connect 2.0—infringed Blue Spike's patents. Dkts. 1 & 43.  In both complaints,

8   Blue Spike also asserted claims for indirect and willful infringement.  *Id.*  However, Blue Spike

9   never came forth with ***any*** evidence (including in response to Magistrate Judge Corley's

10  questioning at the hearing on Adobe's motion to strike) to support its allegations that any of the

11  accused Adobe ad insertion products practiced any of the limitations of the asserted patents, or

12  that Adobe committed indirect or willful infringement.  Blue Spike's entire case was premised on

13  the mistaken and unsupported belief that Adobe's ad insertion products employed digital

14  fingerprinting technology developed by Auditude Inc.  *See, e.g.*, Fisher Decl., Ex. 19 [1-22-15

15  Hearing Tr.] at 10:19-13:12.  Blue Spike's mistaken premise reveals that it never conducted an

16  adequate pre-filing investigation concerning how Adobe's advertising products operated and

17  whether Adobe ever acquired Auditude's digital fingerprinting technology (which it did not).  *See*

18  *Yufa v. TSI Inc.,* No. 09—CV—01315—KAW, 2014 WL 4071902, at *3-*5 (N.D. Cal. Aug. 14,

19  2014) (awarding fees for failure to conduct adequate pre-filing investigation). Even after Adobe

20  repeatedly informed Blue Spike from the beginning of this case that the accused products did not

21  employ any digital fingerprinting technology and that Adobe never acquired Auditude's digital

22  fingerprinting technology (*see, e.g.,* Mar Decl., ¶ 3; Fisher Decl., ¶ 30, Ex. 4 [Motion to Transfer]

23  at 3-4, and Ex. 5 [Helfand Decl.] at ¶ 6-9), Blue Spike continued to litigate.  In fact, Blue Spike

24  needlessly and unreasonably ***expanded*** this litigation by adding a fifth patent after the case was

25  transferred to this District.  *See Lyda v. Fremantlemedia N. Am., Inc.*, No. 10 CIV. 4773 DAB,

26  2012 WL 7828200, at *2 (S.D.N.Y. Aug. 9, 2012) (pre-*Octane Fitness* case awarding fees where

27  action based on nothing more than speculation and where patentee continued to prosecute case

28  after being informed of its lack of merit by accused infringer).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- 16 -

28386\4873936.3

1    The baseless nature of Blue Spike's case was on full display in its woeful infringement

2    contentions.  In the Texas contentions, Blue Spike relied on ***nothing more than "information***

3    ***and belief"*** for limitations found in 113 of the 114 asserted claims.  Fisher Decl., Ex. 12 [Texas

4    Contentions]; Ex. 14 [Fisher 4/2/14 Letter to R. Garteiser].  In addition, Blue Spike relied on a

5    mishmash of third-party blog posts and website printouts seeking to improperly combine

6    elements from the Auditude digital fingerprinting technology with the unrelated Adobe ad

7    insertion technology.  *Id.*  Blue Spike simply ignored Adobe's multiple requests to remedy these

8    deficiencies.  Fisher Decl., at ¶ 21.

9    After the case was transferred in mid-2014, Blue Spike's new infringement contentions

10   fared no better.  Despite stating in Court that Blue Spike understood the Court's clear instruction

11   at the July 2014 Initial CMC[10], Blue Spike's California Contentions contained the same

12   deficiencies found in the Texas Contentions and clearly failed to satisfy requirements of Patent

13   Local Rule 3-1.  *See* Fisher Decl. Ex. 32 [9/26/14 Contentions] & 18 [10/23/14 D. Callaway letter

14   to R. Garteiser].  Some of the major deficiencies included an improper commingling of

15   documents concerning ad insertion products with unrelated Auditude digital fingerprinting

16   technology, the failure to provide a separate claim chart for each of the four accused products,

17   and the complete lack of any contentions supporting Blue Spike's claims under the doctrine of

18   equivalents or for indirect and willful infringement.  *Id.*; *see Logic Devices, Inc. v. Apple Inc.*, No.

19   C 13-02943 WHA, 2014 WL 6844821 (N.D. Cal. Dec. 4, 2014) (awarding fees when plaintiff's

20   complaint failed to include any facts supporting its indirect or willful infringement allegations and

21   providing only speculation as to certain claim elements).  As with the case in Texas, Blue Spike

22   ignored all of Adobe's requests to remedy the deficiencies and even refused to comply with

23   Magistrate Judge Corley's Standing Order in the joint briefing process on Adobe's Motion to

24   Strike.  *See supra* at Section III(E)(5) & (6).  Blue Spike's misconduct served only to run up

25   Adobe's expenses and delay resolution of their action.

26   Faced with Adobe's Motion to Strike, Blue Spike then tried to avoid judicial review of its

27

28   [10] The Court: "you're following our rules, not Texas' rules."; Mr. Garteiser: "I understand, Your
     Honor."  (Dkt. 42, at 15:13-15).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- 17 -

28386\4873936.3

1    contentions by filing "Amended Preliminary Infringement Contentions" (without leave of Court)

2    in an attempt to try to "moot" the motion.  Dkt. 53.  The amended contentions, which were

3    supposed to have "address[ed] Adobe's concerns" (Dkt. No. 53 at 1), ***ignored all but one of the***

4    ***defects raised in the motion***.  *See* Dkt. No. 54 [Reply re the motion to strike].  Blue Spike simply

5    dropped the four ad insertion products it had named in the complaint and the Texas contentions,

6    then named again in the amended complaint and the California contentions—a clear

7    acknowledgement from Blue Spike that it lacked the threshold level of evidence needed to

8    demonstrate infringement as to any of these products under Patent Local Rule 3-1.  Instead, Blue

9    Spike accused a new product (Adobe Auditude's Video Advertising Platform) of infringement,

10   but still failed to set forth how the single remaining accused product infringed any of the asserted

11   patents.  The amended contentions still continued to rely on unrelated articles about digital

12   fingerprinting technology.  *See* Dkt. No. 54 [Reply re the motion to strike].

13         Blue Spike's lack of basis and inadequate investigation was further revealed at the January

14   22, 2015 hearing on Adobe's Motion to Strike.  In response to Magistrate Judge Corley's repeated

15   questioning about what basis Blue Spike had to accuse any of Adobe's products of infringement,

16   Blue Spike never provided a satisfactory answer.  Fisher Decl., Ex. 19 [1-22-2015 Hearing Tr.] at

17   4:19-5:13; 10:19-11:20; 12:24-13:5; 14:1-12; & 16:9-20.  The Court also specifically faulted Blue

18   Spike's amended contentions for impermissibly relying on exhibits that did not even discuss the

19   accused products.  Dkt. 57, at 11:2-16.  Finding that "materials cited here fail to specify what

20   product is being described," Magistrate Judge Corley concluded that "the AICs do not disclose

21   why Plaintiff believes Adobe Auditude—the only product at issue—infringes the Patents-in-

22   Suit."  Dkt. 57, at 10:26-28.  *See IPVX Patent Holdings, Inc. v. Voxernet* LLC, No. 5:13-cv-01708

23   HRL, 2014 WL 5795545, at *5-*8 (N.D. Cal. Nov. 6, 2014) (awarding fees against patent holder

24   for asserting a baseless infringement claim and failing to advance any evidence in support of its

25   literal or doctrine of equivalents infringement theories); *Chalumeau Power Sys. LLC v. Alcatel-*

26   *Lucent,* No. 11-1175-RGA, 2014 WL 4675002, at *1-*3 (D. Del. Sept. 12, 2014) (awarding fees

27   for an inadequate pre-filing investigation where patent holder lumped together numerous

28   limitations in its claim charts and relied on exhibits that did not establish the presence of the

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)                    - 18 -                    28386\4873936.3

1   accused limitation).  Unable to marshal any evidence to support its claims and comply with

2   Magistrate Judge Corley's Order, Blue Spike instead sought to dismiss this case **without**

3   prejudice on February 6, 2015 in hopes of avoiding an adverse judgment and fees award.

            2.     Blue Spike's Repeated Request for Access to Source Code Prior to Serving Infringement Contentions Further Reveals It Lacked Basis to File this Lawsuit.

6         At the July 2014 Initial Case Management Conference, Blue Spike revealed that it did not

7   even know if Adobe infringed the asserted patents, and as a result, it wanted access to source code

8   to determine if it should move forward with the lawsuit.  Blue Spike's candid admission that

9   **"[*w*]*e want the source code to see if there's an issue at all*"** (Fisher Decl, Ex. 22 [7/28/14 CMC

10   Transcript] at 19:10-18) demonstrated that Blue Spike had no basis to file the lawsuit against

11   Adobe, and that Blue Spike was hoping to use the discovery process as a fishing expedition to try

12   to support its contentions.

13         Undeterred by the Court's refusal to allow Blue Spike access to source code at the CMC,

14   Blue Spike nonetheless subsequently requested that Adobe make its source code available for

15   inspection prior to serving infringement contentions.  Fisher Decl., Ex. 16 [9-5-2014 Anderson

16   email to Adobe].  Notwithstanding the clear law of this District that infringement-related

17   discovery is stayed unless and until adequate infringement contentions have been provided, Blue

18   Spike also served wide-ranging document requests—which included requests for Adobe's source

19   code—and four 30(b)(1) deposition notices "to understand the 'fingerprinting' technology you

20   mention and how that relates to Adobe's signal recognition software that is accused of

21   infringement in this action."  *Id.*, *see also* Fisher Decl. at Ex. 29 [12/1/14 R. Garteiser email] &

22   Ex. 30 [Blue Spike's discovery].  These desperate attempts to take discovery from Adobe

23   combined with Blue Spike's startling admission that it needed source code "to see if there's an

24   issue at all" prove Blue Spike had no basis to bring the lawsuit in the first instance.  Simply put,

25   this action should never have been filed.

26      **B.**     **Blue Spike's Counsel Committed Litigation Misconduct By Ignoring the Court's Local Rules and Needlessly Driving Up Litigation Costs and Consuming the Court's Resources.**

28         The manner in which Blue Spike and its counsel brought and then litigated this action—

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- 19 -

28386\4873936.3

including failing to conduct an adequate pre-filing investigation, continuing to litigate when it was apparent the claims were meritless, baselessly adding a fifth patent two years into to the case, repeatedly ignoring Adobe's letters, repeatedly failing to comply with the Court's Rules and needlessly wasting both Adobe's and the Court's resources at every turn—also supports an award of fees to compensate Adobe for its costs of defense and to deter similar misconduct in the future pursuant to 35 U.S.C. §285, 28 U.S.C. §1927, Federal Rules of Civil Procedure 41 and 54(d), Civil L.R. 1-4 and the Court's inherent sanctioning powers. *See Octane Fitness*, 134 S.Ct. at 1756 (stating that litigation misconduct alone is sufficient grounds to award attorney's fees).

> 1.   Blue Spike's Counsel Regularly Displayed a Wanton Disregard for the Court's Rules and Procedures.

Throughout this litigation, Blue Spike and its counsel disregarded the rules and procedures of this Court.  Blue Spike's most eye-opening admission was that it did not know, until its infringement contentions were stricken by Magistrate Judge Corley, that it needed to "maintain the standards of the Patent Local Rules for the Northern District of California, the jurisdiction this case was transferred to, with respect to providing infringement contention charts of every element of every asserted claim."[11]  Dkt. 61, at 4:25-5:1.  This Court has already recognized the fallacy of Blue Spike's claim because "the Court explicitly noted this obligation at the initial case management conference."  Dkt. 74, at 5:2-3; *see also* Fisher Decl. Ex. 19 [1-22-2015 Hearing Tr.] at 5:24-6:25 (Magistrate Judge Corley referring to Judge Gonzalez Rogers' comments at the Initial CMC that this Court's rules apply to Blue Spike's infringement contentions).

Moreover, without first seeking leave from the Court under Patent L.R. 3-6, Blue Spike tried to evade judicial review of its deficient contentions by filing amended infringement contentions in response to Adobe's Motion to Strike to attempt to "moot" that motion.  Dkt. 53.  Exhibiting a similar disregard for the Court's rules and procedures, Blue Spike refused to

---

[11] Blue Spike's claims are further undermined by the fact that plaintiff's counsel (the Garteiser Honea firm) advertises on its website its "experience and familiarity with federal and state courts in East Texas and Northern California."  Fisher Decl., Ex. 2 [www.ghiplaw.com/practice-areas].  Notably, Blue Spike's counsel touts they are "***intimately familiar with the Rules of those two courts***" and their "significant experience" litigating … under these Rules.  *Id.* (emphasis added).

1    participate in the joint briefing process set forth in Magistrate Judge Corley's Standing Order,

2    necessitating that Adobe file a unilateral letter brief.  Then, at the January 22, 2015 hearing on

3    Adobe's Motion to Strike, one of the lead counsel for Blue Spike arrived late after the hearing

4    had started while a second Blue Spike attorney in attendance was not prepared to address the

5    Court's questions.  Fisher Decl., Ex. 19 [1-22-2015 Hearing Tr.] at 1:4-25.  Blue Spike's counsel

6    also completely failed to show up for a call with the ADR Unit on October 22, 2014, and required

7    the ADR Unit to summon Blue Spike's counsel on the previous August 5, 2014 call after failing

8    to attend.  *Id.*, ¶ 26.  Blue Spike's repeated refusal to abide by the Court's Local Rules is grounds

9    alone for sanctions.

10                   2.      Blue Spike's Litigation Strategy Was Designed to Harass and Increase the
                             Cost of Litigation.
11

12           Blue Spike has intended from the outset of this action to extort a nuisance value settlement

13    from Adobe by forcing it to have to incur significant legal fees to defend itself against baseless

14    infringement accusations.  By filing this action in the Eastern District of Texas without any

15    legitimate basis for venue there, forcing Adobe to file a motion to transfer, refusing to agree to a

16    stay pending resolution of that motion, initially asserting every one of the 114 claims of its

17    patents as part of an admitted "kitchen sink approach," and ignoring Adobe's multiple letters

18    regarding its deficient infringement contentions, Blue Spike tried to drive up Adobe's legal fees.

19    Then, while Blue Spike was unable to draft infringement contentions that met the threshold

20    requirement of Patent L.R. 3-1, Blue Spike repeatedly requested burdensome technical and

21    financial discovery from Adobe in hopes of using that information to improperly salvage its

22    infringement contentions and to force Adobe to conduct wasteful litigation.

23           In the CMC Statement filed in this Court, Blue Spike even suggested that Adobe must

24    "provide the source code for the accused functionality" before it would reduce the number of

25    asserted claims to 64 claims.  Dkt. No. 34 at 14:26-15:4.  Blue Spike also requested ***Adobe***

26    ***identify each of its own accused products***, when Patent L.R. 3-1(b) imposes that obligation the

27    patent holder.  *Id.* at 10:3-7.  Lastly, Blue Spike alleged that it needed "technical information to

28    allow it to have a meaningful claim construction process" and demanded that Adobe provide

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)                    - 21 -                        28386\4873936.3

1  discovery on the "structure, function, and operation of such products," produce sales for the

2  accused products, provide Adobe's "annual revenue sales" from 2010-14, and produce discovery

3  on Adobe's knowledge and efforts to avoid infringement. *Id.* at 10:7-11. *See also id.* at 10:12-

4  14 ("Technical claim construction technology includes documents requested above.").  Blue

5  Spike provided no basis in fact or law to support its wrongful allegation that any of those

6  categories of discovery would have been relevant to claim construction. *See Chalumeau Power*

7  *Sys. LLC v. Alcatel-Lucent USA Inc.*, No. CV 11-1175 (RGA), 2014 WL 5814062 at *1-*3 (D.

8  Del. Nov. 6, 2014) (awarding fees against patent holder whose litigation strategy was to string out

9  case to force defendant to incur fees and then dropping case when defendant would not settle).

10          3.        Blue Spike Made a Number of Frivolous Legal Arguments, Forcing Adobe
to Incur Significant Legal Expense in Opposing Each of Them.

11

12         Blue Spike has advanced frivolous legal arguments throughout the course of this action.

13  For instance, in addition to the preposterous contention that it had "just received instruction" that

14  it was required to comply with the Rules of this Court (which formed the sole justification for its

15  motion to dismiss), Blue Spike tried to flip the burden of proof onto Adobe by arguing that Adobe

16  bore the burden of proof on its noninfringement counterclaims (Dkt. 75) and that "it would be a

17  violation of the Taking Clause of the U.S. Constitution for the Court to arbitrarily limit Blue

18  Spike on the number of claims it can assert … until defendants have provided the technical

19  documentation to prove or disprove affirmatively noninfringement as alleged in Defendants'

20  counterclaims."  Dkt. 34, at 14:21-25.  Other frivolous arguments include that:

21  - there is some "conflict" between the Patent Local Rules and the Federal Rules of Civil
Procedure (Dkt. 75, at 4);

22

23  - the Court lost jurisdiction over Adobe's counterclaims because its affirmative claims had
been dismissed with prejudice (Dkt. 73);

24  - Blue Spike could somehow "moot" Adobe's Motion to Strike by serving amended
infringement contentions without leave of court, which ignored all but one of the issues
raised in the Motion (Dkt. 51); and

25

26  - Blue Spike was entitled to dismissal of its claims without prejudice after having its
infringement contentions stricken in its effort to evade Magistrate Judge Corley's Order
(Dkt. 61).

27

28  The Court rejected all of these frivolous positions.  Such behavior provides an independent

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- 22 -

28386\4873936.3

1    grounds for awarding sanctions here. *See Logic Devices, Inc.*, 2014 WL 6844821 (awarding fees

2    for frivolous arguments and failure to comply with this Court's Local Rules).

3                4.    After Having Its Infringement Contentions Stricken, Blue Spike Has
                       Prevented the Prompt Resolution of this Case.

4

5          Even after Magistrate Judge Corley struck Blue Spike's infringement contentions, Blue

6    Spike continued to litigate and oppose the prompt dismissal of its claims with prejudice and the

7    entry of judgment on Adobe's noninfringement counterclaims, needlessly wasting both Adobe's

8    and the Court's time and resources.  Blue Spike first threatened to "double down" on the litigation

9    and refused to provide Adobe with a covenant not to sue or dismiss this action with prejudice

10   unless Adobe would agree to forego seeking reimbursement of its attorney's fees.  Fisher Decl., ¶

11   32.  Rather than comply with Magistrate Judge Corley's Order, Blue Spike filed a motion to

12   dismiss its claims ***without*** prejudice, forcing Adobe to oppose the motion and seek a dismissal

13   with prejudice, which the Court ultimately granted.  Dkts. 61, 62, & 74.  Then, after the Court's

14   May 4, 2015 Order, Blue Spike initially represented it would not oppose the Order to Show Cause

15   only to reverse course and file an objection to the entry of judgment on Adobe's counterclaims

16   based on a litany of meritless arguments, requiring yet another response from Adobe.  The Court

17   overruled Blue Spike's objections and ordered an approved form of judgment be entered.  Dkts.

18   75, 76, & 78.  Blue Spike still resisted, threatening to file a "motion for clarification" and refusing

19   to agree to the proposed form of judgment, until it finally had a change of heart on the day the

20   proposed judgment was due.  This needless motion practice has unnecessarily prolonged the

21   litigation and increased Adobe's cost of defense.  Fisher Decl., ¶ 34.

22       **C.    An Award of Fees Is Appropriate Against Blue Spike's Counsel Pursuant to
                 28 U.S.C. §1927.**

23

24         Blue Spike's counsel has vexatiously prolonged and multiplied this litigation with the

25   intent of extracting a settlement from Adobe, warranting sanctions pursuant to Section 1927.

26   Blue Spike's counsel was informed as early as November 2012 that the accused Adobe ad

27   insertion products did not practice any digital fingerprinting, and that the Auditude digital

28   fingerprinting technology belonged to Yahoo, not Adobe.  Even after Blue Spike entered into a

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)                    - 23 -                        28386\4873936.3

1    license with Yahoo, Blue Spike's counsel needlessly litigated against Adobe for another two

2    years, accusing the unrelated ad insertion technology of infringement without any basis

3    whatsoever.  Blue Spike opposed Adobe's transfer request, and then opposed Adobe's stay

4    request pending the disposition of the transfer motion, all with the intention of forcing Adobe to

5    continue incurring expenses to defend the case.  These tactics were exacerbated by counsel's

6    choice to assert all 114 claims from the four asserted patents in the Texas infringement

7    contentions, a "kitchen sink" approach rejected both by the Texas Court and this Court.  *See* D.I.

8    38 [Scheduling Order] at 1 (limiting number of claims) and Fisher Decl. at Ex. 13 [Scheduling

9    and Discovery Order in Texas Case] at 8.  This led Adobe to incur significant expense preparing

10   invalidity contentions and developing claim construction positions.

11       Adobe wrote Blue Spike's counsel several letters detailing the deficiencies with the

12   infringement contentions, all of which were ignored.  After the case was transferred to this Court,

13   rather than remedy its deficient infringement contentions, Blue Spike's counsel expanded the

14   litigation by asserting a fifth patent in an amended complaint, leveling baseless spoliation

15   accusations, continuing to seek source code and other burdensome discovery notwithstanding the

16   Court's comments at the Initial CMC, failing to cooperate in the joint letter brief process

17   notwithstanding Judge Corley's Standing Order, and then seeking to "moot" Adobe's motion by

18   serving (without leave of Court) amended infringement contentions that failed to address the

19   issues raised in Adobe's motion and its prior letters.

20       Even after the hearing with Magistrate Judge Corley, Blue Spike threatened to "double

21   down" on the litigation.  Fisher Decl., ¶32.  Blue Spike's counsel further engaged in needless

22   motions practice based on frivolous legal arguments—including that Blue Spike had "just

23   received instruction" that it was required to comply with the Rules of this Court—by refusing to

24   dismiss its claims with prejudice and objecting to entry of judgment on Adobe's non-infringement

25   counterclaims. *Id.*, ¶34.  The Court has already recognized that such tactics "suggest bad faith,"

26   and that this litigation has been conducted in a manner that is "the antithesis of diligent," and has

27   been marked by a "disregard for the local rules" and  "gamesmanship." Dkt. 57 at 8, n.4; Dkt. 74

28   at 4:10-5:3 & n.1; Dkt. 78 at 2.  An award of sanctions against Blue Spike's counsel is therefore

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)

- 24 -

28386\4873936.3

1 warranted pursuant to Section 1927. *See Baldwin Hardware Corp. v. Franksu Enter. Corp.*, 78

2 F.3d 550, 561 (Fed. Cir. 1996) (affirming that fees under §1927 can be awarded for failing to

3 obey court orders and local rules); *Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters., Inc*., No.

4 CV 08-7587 R (JWJx), 2009 WL 9137315, at *2-*3 (C.D. Cal. Dec. 14, 2009) (awarding fees

5 under §1927 because plaintiff failed to offer evidence of infringement on several claim elements

6 even in response to motions practice and conducted an inadequate pre-filing investigation).

## VI.  CONCLUSION

8  For the foregoing reasons, the Court should declare this is an exceptional case and enter

9 an order jointly and severally against Blue Spike and its counsel awarding Adobe fees in the

10 amount of $762,103.40.[12]  Adobe should further be awarded the fees it incurred in bringing this

11 motion and will present an updated amount at the hearing.

12 Dated: June 16, 2015                              FARELLA BRAUN + MARTEL LLP

13

14                                                                By:   /s/ Jeffrey M. Fisher
                                                                        Jeffrey M. Fisher
15
                                                                     Attorneys for Defendant
16                                                                   ADOBE SYSTEMS INC.

17

18

19

20

21

22

23

---

[12] Adobe is concerned that Blue Spike, LLC is a shell company with insufficient assets to satisfy
24 an award of fees pursuant to this motion.  Adobe understands that discovery has been taken
concerning the assets and relationships of the three companies owned and operated by Mr.
25 Moskowitz—Blue Spike, LLC, its corporate parent Blue Spike Inc., and Wistaria Trading.  Blue
Spike has refused to allow Adobe to see these materials in connection with this motion.  Fisher
26 Decl., ¶ 36.  Blue Spike has also refused to provide any assurance, guarantee, or bond for the
amount Adobe has requested (or any amount).  *Id.*  Adobe therefore requests the Court order Blue
27 Spike to produce Mr. Moskowitz's deposition testimony and exhibits so that Adobe and the Court
28 can determine if Blue Spike can satisfy any fee award imposed upon it.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

ADOBE'S MOTION FOR FEES
CASE # 14-cv-01647-YGR (JSC)                         - 25 -                              28386\4873936.3