Randall T. Garteiser (CBN 231821)
rgarteiser@ghiplaw.com
Christopher A. Honea (CBN 232473)
chonea@ghiplaw.com
Ian N. Ramage (CBN 224881)
iramage@ghiplaw.com
Kirk J. Anderson (CBN 289043)
kanderson@ghiplaw.com
Molly A. Jones (CBN 301419)
GARTEISER HONEA, P.C.
119 W. Ferguson St.
Tyler, Texas 75702
Telephone:  (903) 705-7420
Facsimile:  (888) 908-4400

Attorneys for Plaintiff
BLUE SPIKE, LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC | Civil Case No.: 14-cv-1647-YGR |
| Plaintiff, | |
| v. | **BLUE SPIKE, LLC'S OPPOSITION TO ADOBE SYSTEMS INC.'S MOTION FOR ATTORNEY'S FEES** |
| ADOBE SYSTEMS INC. | |
| Defendant. | |
| | Hon. Yvonne Gonzalez Rogers |
| | Courtroom 1- Fourth Floor |

GARTEISER HONEA – TRIAL ATTORNEYS

# TABLE OF CONTENTS

I.  INTRODUCTION ....................................................................................................1

II. STATEMENT OF FACTS .......................................................................................1
  A.  PRE-SUIT BACKGROUND.......................................................................................1
  B.  SUIT AGAINST ADOBE IN THE EASTERN DISTRICT OF TEXAS..............................2
  C.  TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA ...................................4
  D.  POST-TRANSFER PROCEEDINGS ...........................................................................4
  E.  TERMINATION OF THE SUIT .................................................................................7

III. LEGAL STANDARDS ..........................................................................................8
  A.  35 U.S.C. §285 .................................................................................................8
  B.  28 U.S.C. §1927 ...............................................................................................9
  C.  INHERENT POWER OF THE COURT .......................................................................9

IV. ARGUMENT ..........................................................................................................9
  A.  35 U.S.C. §285 DOES NOT SUPPORT A FEE AWARD HERE. ...............................10
  B.  FEES ARE NOT WARRANTED UNDER 28 USC § 1927. .........................................17
  C.  ATTORNEY'S FEES ARE NOT WARRANTED UNDER RULE 41(A)(2), RULE 54(D), CIVIL LOCAL RULE 1-4, OR THE COURT'S INHERENT POWER. ...................................22

V.  CONCLUSION.....................................................................................................25

GARTEISER HONEA – TRIAL ATTORNEYS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GARTEISER HONEA – TRIAL ATTORNEYS

# TABLE OF AUTHORITIES

## CASES

*Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 ............................................9

*Am. Tech. Inc. v. Am. Future Tech. Corp.*, 2012 U.S. Dist. LEXIS 33992, *22 (M.D. Fla. Mar. 14, 2012) ...........................................................................................................................................11

*Applied Materials, Inc. v. Multimetrixs, LLC,* 2009 U.S. Dist. LEXIS 44061, *8-9 (N.D. Cal. May 26, 2009) ...........................................................................................................................................15

*Armacell LLC v. Aeroflex USA, Inc.*, 2015 U.S. Dist. LEXIS 81614, *12 (M.D.N.C. June 24, 2015)11

*Atmel Corp. v. Silicon Storage Tech., Inc.*, 2002 U.S. Dist. LEXIS 27109, *37-38 (N.D. Cal. June 21, 2002) ...........................................................................................................................................16

*Baldwin Hardware Corp. v. FrankSu Enterprise Corp.* ..........................................................17, 18

*Bender v. Freed*, 436 F.3d 747, 751 (7th Cir. 2006) ...................................................................20

*Benedict v. Hewlett-Packard Co.*, No. 13-CV-00119-LHK, 2014 WL 234207, at *8 (N.D. Cal. Jan. 21, 2014) ...........................................................................................................................................21

*Boyd v. Accuray, Inc.*, No. 11-CV-01644-LHK, 2012 WL 4936591, at *7 (N.D. Cal. Oct. 17, 2012)22

*Burnette v. Godshall*, 828 F.Supp. 1439, 1443 (N.D.Cal.1993)...................................................23

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991)......................................................................9

*Chavez v. Northland Grp.*, No. CV-09-2521-PHX-LOA, 2011 WL 317482, at *6 (D. Ariz. Feb. 1, 2011) ...........................................................................................................................................20

*Chem v. New York Life Ins. Co.*, No. C 97-1780 SBA, 1997 WL 792942, at *3 (N.D. Cal. Oct. 21, 1997) ...........................................................................................................................................23

*Cmty. Hous. P'ship v. Byrd*, No. 13-3031 JSC, 2013 WL 6087350, at *7 (N.D. Cal. Nov. 19, 2013)17

*Co-Investor, AG v. Fonjax, Inc.*, No. C 08-1812 SBA, 2010 WL 1292767, at *3 (N.D. Cal. Mar. 31, 2010) ...........................................................................................................................................23

*Components, Inc. v. Micron Tech., Inc.*, 2012 U.S. Dist. LEXIS 76584, 2012 WL 1981698, at *6 (E.D. Va.)......................................................................................................................................16

*Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 490 (9th Cir.1988)......................................17

*Dutra v. BFI Waste Mgmt. Sys. of N. Am., Inc.*, No. 14-CV-04623-NC, 2015 WL 2251203, at *5 (N.D. Cal. May 13, 2015) ..............................................................................................................20

*EON Corp. IP Holdings LLC v. Cisco Sys.*, 2014 U.S. Dist. LEXIS 101923, at *23 (N.D. Cal. July 25, 2014)........................................................................................................................9, 14, 17

*Eon-Net LP v. Flagstar Bancorp* 249 F.App'x 189, 195 (Fed. Cir. 2007) .............................11, 13

*Gametek LLC v. Zynga, Inc.*, 2014 U.S. Dist. LEXIS 122834, *12-13 (N.D. Cal. Sept. 2, 2014).......13

*Gaymar Indus. v. Cincinnati Sub-Zero Prods.,* 2015 U.S. App. LEXIS 10736, *19-20 (Fed. Cir. June 25, 2015)....................................................................................................................................25

*Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir. 1987) ...............................................................20

*GRiD Sys. Corp. v. John Fluke Mfg. Co.*, 41 F.3d 1318, 1319 (9th Cir. 1994)...............................21

*Immersion Corp. v. Sony Computer Entm't Am., Inc.*, 2005 U.S. Dist. LEXIS 4777, *35 (N.D. Cal. Jan. 10, 2005)................................................................................................................14, 16

*In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010) ....................................................................9

*In re Haynes*, No. C 10-4642 PJH, 2013 WL 1195524, at *5 (N.D. Cal. Mar. 22, 2013) .......17, 20, 22

*Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters., Inc. (U.S.A.)*, No. CV 08-7587 R JWJX, 2009 WL 9137315, at *4 (C.D. Cal. Dec. 14, 2009) ....................................................................................9

*Johnson v. Hewlett-Packard Co.*, No. C 09-03596 CRB, 2014 WL 3703993, at *5 (N.D. Cal. July 24, 2014) ...........................................................................................................................................17

GARTEISER HONEA – TRIAL ATTORNEYS

*JS Prods. v. Kabo Tool Co.*, 2014 U.S. Dist. LEXIS 176275, *14-15 (D. Nev. Dec. 22, 2014) .........14

*Kelly v. Eli Lilly & Co.*, 2015 U.S. Dist. LEXIS, at *5-6 (N.D. Cal. Apr. 30, 2015).........................24

*Kilopass Tech, Inc. v. Sidense Corp.*, No. C 10–02066 SI, 2014 WL 3956703, at *27 (N.D. Cal. Aug. 12, 2014).......................................................................................................................................8

*Larsen v. King Arthur Flour Co.*, No. C 11-05495 CRB, 2012 WL 2590386, at *1 (N.D. Cal. July 3, 2012).......................................................................................................................................23

*Lee Yunn Enterprises* ...........................................................................................................................18

*Levine v. The Entrust Grp., Inc.*, No. C 12-03959, 2013 WL 3973780, at *1 (N.D. Cal. July 31, 2013) ..............................................................................................................................................13, 21

*Lofton v. Verizon Wireless (VAW) LLC*, No. 13-CV-05665-YGR(JSC), 2015 WL 3805194, at *6 (N.D. Cal. June 18, 2015)..............................................................................................................25

*Mach. Corp. of Am. v. Gullfiber Ab*, 774 F.2d 467, 472 (Fed. Cir. 1985).........................................11

*MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012) ........................................8

*Mirch v. Frank*, 266 F.App'x 586, 588 (9th Cir. 2008)..........................................................................9

*MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1280 (9th Cir. 1999) .........................24

*MyMedicalRecords, Inc. v. Jardogs, LLC*, 2015 U.S. Dist. LEXIS 51804, *9-10 (C.D. Cal. Apr. 20, 2015).......................................................................................................................................14

*NovelPoster v. Javitch Canfield Grp.*, No. 13-CV-05186-WHO(JCS), 2014 WL 7149216, at- *14 (N.D. Cal. Dec. 12, 2014).............................................................................................................22

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1755-56 (2014) ...........8, 9, 11

*Optimal Mkts., Inc. v. FTI Consulting, Inc.*, 2009 U.S. Dist. LEXIS 50989, 2009 WL 1704665 (N.D. Cal. June 17, 2009) ......................................................................................................................23

*Oracle Am., Inc. v. Terix Computer Co., Inc.*, No. 5:13-CV-03385-PSG, 2015 WL 2398993, at *4 (N.D. Cal. May 19, 2015).............................................................................................................25

*Parker West Int'l, LLC v. Clean Up Am., Inc.*, 2009 U.S. Dist. LEXIS 86346, *24 fn. 5 (N.D. Cal. Sept. 1, 2009) ................................................................................................................................15

*Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003)...................................9

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. C 09-5235 MMC, 2013 WL 684915, at *3 (N.D. Cal. Feb. 25, 2013).......................................................................................20

*Rodriguez v. Serv. Employees Int'l*, No. C-10-01377 JCS, 2011 WL 4831201, at *4 (N.D. Cal. Oct. 12, 2011).........................................................................................................................................9

*Rothschild Digital Media Innovations, LLC v. Sony Computer Entm't Am. LLC*, 2015 U.S. Dist. LEXIS 44891, *12 (N.D. Cal. Apr. 2, 2015).............................................................................10, 13

*SalesBrain, Inc. v. AngelVision Techs.*, No. C 12-05026 LB, 2013 WL 2422762, at *3 (N.D. Cal. June 3, 2013) ................................................................................................................................21

*Schutts v. Bentley Nevada Corp.*, 966 F. Supp. 1549, 1559 (D. Nev. 1997)................................17, 19

*Site Update Solutions, LLC v. Accor N. Am., Inc.*, 2015 U.S. Dist. LEXIS 17603, *48-52 (N.D. Cal. Feb. 11, 2015) ..............................................................................................................................16

*Small v. Implant Direct Mfg. LLC*, No. 06 CIV. 683 NRB, 2014 WL 5463621, at *3-4 (S.D.N.Y. Oct. 23, 2014).......................................................................................................................................12

*Thompson v. Harris*, No. 12-CV-06529-NJV, 2014 WL 2930789, at *6 (N.D. Cal. June 27, 2014) ..22

*TriReme Med., LLC v. Angioscore, Inc.*, 2015 U.S. Dist. LEXIS 70633, *7-8 (N.D. Cal. May 28, 2015).......................................................................................................................................14

*Update Solutions, LLC v. Accor North America, Inc.*, 2015 U.S. Dist. LEXIS 17603, *33 (N.D. Cal. Feb. 11, 2015) ..............................................................................................................................14

*Zambrano v. City of Tustin*, 885 F.3d 1473, 1479 (9th Cir. 1989) ......................................................24

**STATUTES**

28 U.S.C. §1927.................................................................................................passim
35 U.S.C. §285..................................................................................................passim
35 U.S.C. §286.........................................................................................................7

**RULES**

Fed. R. Civ. P. 41(a)(2)..............................................................................................23

GARTEISER HONEA – TRIAL ATTORNEYS

GARTEISER HONEA – TRIAL ATTORNEYS

## I.      INTRODUCTION

Adobe seeks over $750,000 in attorney's fees for a matter that Blue Spike voluntarily dismissed before discovery or claim construction. As shown by the cases that Adobe cites, as well as those cited in this opposition, there is no precedent for awarding fees so early in a case—or on facts similar to those here. Blue Spike asks the Court to consider the relevant case law and the full history of the case—not merely Adobe's mischaracterizations of Blue Spike's conduct—in reviewing whether the drastic remedy of awarding fees and sanctioning Blue Spike and its counsel is actually warranted and consistent with due process.

## II.     STATEMENT OF FACTS

### A.      Pre-Suit Background

Blue Spike's four patents-in-suit teach pioneering advancements in the field of digital fingerprinting.[1] Contrary to Adobe's suggestions, Blue Spike is not a patent troll. Its founder and CEO, Scott Moskowitz, is the co-inventor on each of the patents-in-suit[2] and the other co-inventor Mike Berry after leaving Blue Spike, Inc., has spent the last thirteen years at Adobe, where he now works as a Senior Engineering Manager.[3] Moskowitz has dedicated his entire adult life to developing technologies designed to help artists get reimbursed for their artistic contributions by tracking the copies as opposed to protecting the original.  His technology is used to combat on-line piracy, including in the field of digital-content recognition.  The PTO has awarded him over five (5) patents in this particular field. Blue Spike's founders worked in the acoustic and signal processing field, including watermarking and performed services for companies.  Convinced that several users of digital-fingerprinting technology were infringing on Blue Spike's foundational patents in the field,

---

[1] Broadly speaking, digital fingerprinting is a means to identify digital material—including video, audio, and text—based on unique digital markers within the material itself. At its most basic, digital fingerprinting involves at least three steps: (1) cataloging a digital work's identifying characteristics, (2) putting an abstract of the digital work in a reference database, and (3) scanning the Internet, radio stations, television stations, and other media sources to see whether the digital content from those sources has the same "digital fingerprint" as the abstracted work in the reference database. By finding matches between "what's found out in the world" and "what's found in a database of protected digital content," the digital-fingerprinting process is able to detect the use of protected works.

[2] Declaration of Randall Garteiser ("Garteiser Decl."); ¶ 2, 33, Ex. 36.

[3] Garteiser Decl., ¶ 34, Ex. 37 (Berry recites "In 13+ years at Adobe Systems I have gone from an engineer on the Premiere Pro team to a Sr. Engineering Manager in the Digital Video and Audio group.").

1

Blue Spike and its counsel investigated potential infringing products and concluded that Adobe was an infringer.[4]  Other companies, including Shazam and Yahoo! have licensed Blue Spike's patents.[5]

In late 2011, Adobe purchased Auditude, Inc., whose technology "fingerprints everyone and everything."[6] After the purchase, Adobe confirmed it was "very committed to Auditude product lines."[7] Adobe admits that for a period of at least two months before Blue Spike's suit, Adobe possessed Auditude's fingerprinting source code and used it to service Auditude's "legacy" fingerprinting clients.[8] Adobe continued to advertise fingerprinting technology post-suit.[9]

Adobe initially told Blue Spike—without providing corroborating evidence—that it did not acquire any digital-fingerprinting software or clients as part of its purchase of Auditude. Instead, it claimed Yahoo! had purchased all of Auditude's fingerprinting assets in 2010 and that those assets were not part of what Adobe later purchased in 2011. Yet, contradicting those assertions, Adobe also claimed it was covered by Yahoo!'s 2013 license of Blue Spike's technology. Adobe never explained how it could be covered by Yahoo!'s license despite allegedly not acquiring any of Auditude's fingerprinting assets from Yahoo!.[10] Adobe refused to show the alleged agreement involving the sale of Auditude to corroborate its position.[11]  Later, Adobe admitted that it had in fact received fingerprinting source code and customers from Auditude and had possessed them for at least two months.[12]

**B.    Suit Against Adobe in the Eastern District of Texas.**

---

[4] Garteiser Decl., ¶ 2.

[5] Declaration of Christopher A. Honea ("Honea  Decl."), ¶ 5.

[6] Honea  Decl., ¶ 19, Ex. 10.

[7] Honea Decl., ¶ 20 Ex. 11.

[8] Honea Decl., ¶ 17, Ex. 8 ("Specifically, Adobe only began using the accused fingerprinting technology for a [sic] after Adobe acquired Auditude Inc. in October 2011 to allow Auditude's legacy customers sufficient time to find alternative service providers.").

[9] Honea Decl., ¶ 10, Ex. 1.

[10] Yahoo! later confirmed that Adobe was not covered by Yahoo!'s license. Garteiser Decl., ¶ 10.

[11] Garteiser Decl., ¶ 7.

[12] Adobe admits: "After Adobe acquired Auditude in November 2011, Adobe briefly serviced a few legacy Auditude digital fingerprinting customers . . . before permanently shutting down the fingerprinting services in January 2012." Mot. 4 n.6. This alone shows Blue Spike's infringement claims were never baseless.

GARTEISER HONEA – TRIAL ATTORNEYS

Blue Spike sued Adobe in the Eastern District of Texas in August 2012.[13] Blue Spike is a Texas company with its offices, employees, and records all located in the Eastern District. It sued in Texas because it was concerned that, after the passage of the America Invents Act, filing suits against potential infringers in multiple venues might be viewed as forum shopping for the best claim construction. Adobe answered Blue Spike's complaint and denied infringing any of Blue Spike's patents, but did not move to dismiss for improper venue.

Blue Spike served infringement contentions on Adobe[14] and other defendants whom Blue Spike believed infringed its patents. At least one defendant filed a motion to strike Blue Spike's infringement contentions, raising many of the same objections Adobe eventually raised.[15] The Texas court denied the defendant's motion to strike, holding Blue Spike's doctrine-of-equivalents references were sufficient and that Blue Spike's infringement contentions complied with Local Patent Rule 3-1(c).[16] Similarly, the Texas court ruled that Blue Spike's indirect-infringement and willful-infringement contentions were sufficient. (E.g. Ex. 14). Blue Spike's infringement contentions and indirect-infringement and willful-infringement claims against Adobe were, in every meaningful respect, identical to the ones that the Texas court upheld.

After Blue Spike filed suit, Adobe admitted its initial representations to Blue Spike were false and that it had, in fact, acquired digital-fingerprinting source code and customers from Auditude and still possessed them as late as January 2012.[17] It also admitted it had "begun using the accused fingerprinting technology for a [while] after Adobe acquired Auditude, Inc. in October 2011 to allow Auditude's legacy customers sufficient time to find alternative service providers."[18] Adobe claimed it subsequently "shut down its fingerprinting service,"[19] asserting it had not kept "any documents or

---

[13] Garteiser Decl., ¶ 35, Ex. 38.

[14] Garteiser Decl., ¶ 5.

[15] Honea Decl,¶¶ 22,23, Exs. 13, 14.

[16] Honea Decl,¶¶ 22  Ex. 13.

[17] [Garteiser Decl., ¶ 17, Ex. 8 ("Specifically, Adobe only began using the accused fingerprinting technology for a [sic] after Adobe acquired Auditude Inc. in October 2011 to allow Auditude's legacy customers sufficient time to find alternative service providers.").

[18] Honea Decl., ¶ 17, Ex. 8.

[19] Honea Decl., ¶ 21, Ex. 12.

GARTEISER HONEA – TRIAL ATTORNEYS

source code that describe the operation of any aspects or elements of the accused Auditude fingerprinting technology."[20]

Blue Spike sought discovery to validate Adobe's assertions, but Adobe refused.[21] Adobe conceded that it had documents on "tracking and administrative tasks," but refused to produce them because "[t]he burden of any backup restoration far outweighs any potential relevance."[22] Because Adobe also claimed its accused technology was covered by Yahoo!'s license, Blue Spike tried to orchestrate a conference call between Yahoo!'s and Adobe's attorneys to discuss the matter.[23] Yahoo!'s counsel told Blue Spike's counsel that they did not believe Yahoo!'s license covered Adobe—and agreed to talk to Adobe's counsel to share their opinion.[24] But Yahoo! decided not to follow through with the call.[25] Still, from Blue Spike's perspective, Yahoo! corroborated that Adobe lacked a licensing defense, and Adobe refused to show otherwise.[26]

### C.    Transfer to the Northern District of California

Adobe filed a motion to transfer eight months after it answered Blue Spike's complaint. Blue Spike opposed the motion because all of its employees and assets were in Texas, Blue Spike's CEO and co-inventor of the patents-in-suit had a medical condition that made traveling difficult, and judicial-efficiency concerns weighed against transfer because Blue Spike had several other E.D. Texas cases concerning the same patents.[27] In March 2014, the Texas court granted Adobe's motion and transferred the case to this Court.

### D.    Post-Transfer Proceedings

After transfer, this Court held a case management conference at which it advised Blue Spike to conform to the local rules. Blue Spike took the Court's instructions seriously and even agreed voluntarily to reduce the number of asserted claims against Adobe from 114 to less than 40. It also began trying to work with Adobe to resolve the dispute over the infringement contentions,

---

[20] Honea Decl., ¶ 17, Ex. 8
[21] Garteiser Decl., ¶ 4 .
[22] Honea, Decl., ¶17, Ex. 8.
[23] Garteiser Decl., ¶ 8
[24] Garteiser Decl., ¶ 8
[25] Garteiser Decl., ¶ 8
[26] Garteiser Decl., ¶ 8
[27] Garteiser Decl., ¶ 36, Ex. 39

GARTEISER HONEA – TRIAL ATTORNEYS

recognizing that although they were sufficient by E.D. Texas standards, they may be insufficient in this Court.[28] On November 21, 2014, Adobe provided Blue Spike with its portion of a draft joint letter brief to strike Blue Spike's infringement contentions. It asked Blue Spike to return its portion of the brief in only one-and-a-half working days.[29] Blue Spike responded that this did not provide enough time.[30] Blue Spike also expressed concern with Adobe's conflicting statements,[31] but promised to revise its infringement charts by December 15, 2014 to address Adobe's concerns.[32] Adobe acknowledged Blue Spike's proposed December 15 deadline and indicated the need for a *three-month* extension of its own responsive deadline,[33] but only three working days later threatened to file a motion to strike unless Blue Spike explained exactly how it planned to revise its contentions.[34] Blue Spike responded: "If your client is declining Blue Spike's offer to supplement [its infringement contentions], then Adobe can file its letter with the Court."[35] Adobe's counsel responded the same day—14 days before Blue Spike's planned serve of updated infringement contentions—and declared that because Blue Spike failed "to identify what changes Blue Spike is now offering to make," Adobe would "proceed with bringing this to the Court's attention tomorrow."[36]. Rejecting Blue Spike's request for a modest amount of time to amend the infringement contentions, Adobe made good on its threat and requested leave the very next day to file a motion to strike Blue Spike's infringement contentions, thereby short-circuiting Blue Spike's plan to serve amended infringement contentions by December 15, 2014.

Adobe's insistence on racing to the courthouse contrasts with the approach of other similarly situated defendants. For example, when Blue Spike discussed amending its infringement contentions

---

[28] Garteiser Decl., ¶ 11

[29] Garteiser Decl., ¶ 20, Ex. 23 at 6

[30] Garteiser Decl., ¶ 20, Ex. 23 at 5.

[31] For instance, Adobe admitted that it had previously possessed the accused Auditude technology (Exs. 8, 13) but now maintains that "Adobe never acquired the Auditude digital fingerprinting technology" (Mot. at 4) and "Adobe never had source code for the Auditude digital fingerprinting technology because that technology was owned and operated by Yahoo" (Mot. at 8).

[32] Garteiser Decl., ¶ 20, Ex. 23 at 4

[33] "Assuming that Blue Spike does in fact serve supplemental contentions on December 15, 2014, Adobe will require an extension of its deadline under P.R. 3-3 and 3-4 until March 6, 2015." Ex. 23 at 3.

[34] Garteiser Decl., ¶ 20, Ex. 23 at 1.

[35] Garteiser Decl., ¶ 20, Ex. 23 at 2.

[36] Garteiser Decl., ¶ 20, Ex. 23 at 1.

GARTEISER HONEA – TRIAL ATTORNEYS

with Adobe, it also discussed similar matters with Google (whose case had also been transferred to this Court).[37] In response to similar concerns (based on the local rules) raised by Google, Blue Spike agreed to revise its infringement contentions and reassess its position on willfulness and indirect infringement.[38] But unlike Adobe, Google did not jump the gun. Blue Spike went on to serve Google with revised infringement contentions and to drop its claims of willfulness, indirect infringement, and doctrine-of-equivalents-based direct infringement, satisfying Google's concerns.[39] From Blue Spike's perspective, discussions with Adobe should have followed a similar course: Blue Spike had already reduced the list of accused products to one and had agreed to address the rest of Adobe's concerns by December 15, 2014. But, unlike Google, Adobe refused to wait the short period requested and instead burdened the Court with a premature motion to strike. Adobe's complaints about Blue Spike's infringement contentions never needed to be brought before the Court if Adobe had simply given Blue Spike the reasonable amount of time requested.

The Court granted Adobe's motion, striking Blue Spike's claims of indirect infringement, willful infringement, and doctrine-of-equivalents-based direct infringement. The Court understandably felt burdened by a matter the parties should have handled themselves. But mistakenly believing Blue Spike had refused to work with Adobe to resolve the infringement contentions, the Court suggested Blue Spike been "the antithesis of diligent," was "perhaps, motivated by gamesmanship," and was disregarding the local rules. A fuller understanding of the facts may have allayed those concerns. In reality, Blue Spike was trying to revise its infringement contentions to address Adobe's concerns, had asked Adobe for a reasonable time (less than four weeks) to amend its contentions, and tried to resolve the issue out of court—but Adobe chose to reject Blue Spike's request and asked the Court to intervene.

Besides working out of court to resolve the infringement-contention dispute, Blue Spike also initiated settlement discussions with Adobe.[40] Blue Spike sincerely believed then, as it does now, that it was due past damages for the digital-fingerprinting code and customers that Adobe admits it had between October 2011 and January 2012. *See* Ex. 15 at 12:6-18; *see also* Ex. 8. Blue Spike offered to

---

[37] Garteiser Decl., ¶ 11.
[38] Garteiser Decl., ¶¶ 28-31, Exs. 31-34.
[39] Garteiser Decl., ¶ 31, Ex. 34.
[40] Honea Decl., ¶¶ 3-6.

GARTEISER HONEA – TRIAL ATTORNEYS

settle based on those past damages alone, which it believed were recoverable under 35 U.S.C. §286. Adobe now frames this overture—and correspondingly modest demand amount—as an attempt to extort a "nuisance" settlement. But that unfair characterization is belied not only by Blue Spike's conduct here (described above) but also by (1) its voluntarily dismissals of multiple defendants who provided evidence—as opposed to mere attorney assertions—that they had not infringed, (2) its *de minimis* settlements with other defendants who had infringed but were insolvent, and (3) settlements for $0 with still other defendants who provided reasonable assurances that they were not practicing infringing technology.[41]

### E.    Termination of the Suit

After Adobe declined to settle for past damages, Blue Spike considered whether the potential upside of continuing litigation outweighed other burdens.[42] Blue Spike ultimately decided to drop the suit. But Blue Spike believed Adobe had infringed in the past and might infringe again in the future, so it did not want to foreclose a future opportunity to pursue damages against Adobe.[43] Blue Spike thus sought to dismiss without prejudice.

Adobe opposed that request. And the Court eventually opined that Blue Spike's request to dismiss without prejudice was motivated by a desire to avoid updating its infringement contentions. Respectfully, that was not a correct assumption. In reality, other factors (of which the Court was not fully aware) motivated Blue Spike's decision. Blue Spike was already in the process of preparing technical and damages expert reports against four defendants in the E.D. Texas litigation, which was extremely expensive and time-consuming.[44] Blue Spike also faced important upcoming deadlines in its E.D. Texas cases, including rebuttal expert reports, the close of factual discovery, and deadlines for *Daubert* and dispositive-motion letter briefs, all of which made Blue Spike's prosecution of its case against Adobe in California more difficult.[45] Because this case had not progressed past the pleading stage and had lower financial stakes than the E.D. Texas cases, Blue Spike decided that

---

[41] Honea Decl., ¶¶ 25-27, Exs. 16-18.
[42] Garteiser Decl., ¶¶ 15-17.
[43] Garteiser Decl., ¶ 16.
[44] Garteiser Decl., ¶ 15.
[45] Garteiser Decl., ¶ 15.

GARTEISER HONEA – TRIAL ATTORNEYS

dropping this case in California (an inconvenient forum not of its choosing) was the best way to conserve its limited resources.

Blue Spike initially proposed a walk-away settlement, but Adobe refused unless it received a free license to Blue Spike's patents-in-suit—thereby confirming its belief that Blue Spike's patents were indeed valuable and potentially useful for Adobe's future operations.[46] Unwilling to part so easily with its hard-earned intellectual property, and believing Adobe owed it past infringement damages at a minimum, Blue Spike declined to settle on those terms and instead moved to dismiss its claims without prejudice. Adobe opposed Blue Spike's motion and then opposed Blue Spike's proposal to dismiss *with* prejudice with each side bearing its own costs and fees. By this time, Adobe had already threatened to seek attorney's fees. Accordingly, Blue Spike opposed entry of judgment on Adobe's counterclaims in order to preserve error on claims that might support any award of Adobe's fees.

Soon after the Court ruled that Blue Spike's dismissal would be with prejudice, Adobe filed the instant motion for attorney's fees totaling over $750,000.

## III.     LEGAL STANDARDS

### A.     35 U.S.C. §285

Attorney's fee awards under 35 U.S.C. §285 are "reserved for 'exceptional' cases." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1755-56 (2014). "When deciding whether to award attorney fees under §285, a district court engages in a two-step inquiry." *Kilopass Tech, Inc. v. Sidense Corp.*, No. C 10–02066 SI, 2014 WL 3956703, at *27 (N.D. Cal. Aug. 12, 2014) (citing *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012)). First, the court must determine whether the prevailing party has proved that the case is exceptional. *Id.* "If the district court finds that the case is exceptional, it must then determine whether an award of attorney fees is justified." *Id.* A court must make these determinations on a case-by-case basis, considering the *totality* of the circumstances. *Octane Fitness*, 134 S. Ct. at 1756. Among the nonexclusive factors the district court may consider are "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance

[46] Garteiser Decl., ¶ 16.

GARTEISER HONEA – TRIAL ATTORNEYS

considerations of compensation and deterrence." *Id.* at 1756 n.6. The movant bears the burden of

showing by a preponderance of the evidence that it is entitled to an attorneys-fees award. *Id.* at 1758.

### B.    28 U.S.C. §1927

28 U.S.C. §1927 provides: "Any attorney . . . who so multiplies the proceedings in any case

unreasonably and vexatiously may be required by the court to satisfy personally the excess costs,

expenses, and attorneys' fees reasonably incurred because of such conduct." "[R]egional circuit law

controls the analysis of whether to impose Section 1927 sanctions against a party in a patent

infringement case." *Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters., Inc. (U.S.A.)*, No. CV 08-7587

R JWJX, 2009 WL 9137315, at *4 (C.D. Cal. Dec. 14, 2009) (citing *Phonometrics, Inc. v. Westin

Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003)). That being so, "[a] court can award §1927

sanctions only upon a finding of bad faith, which is present when an attorney acts with knowing

recklessness or argues a meritorious claim for the purpose of harassing the opposition." *Mirch v.

Frank*, 266 F.App'x 586, 588 (9th Cir. 2008). "The key term in [§1927] is 'vexatiously'; carelessly,

negligently, or unreasonably multiplying the proceedings is not enough." *In re Girardi*, 611 F.3d

1027, 1061 (9th Cir. 2010). "The term 'vexatious' has been defined as lacking justification and

intended to harass." *Rodriguez v. Serv. Employees Int'l*, No. C-10-01377 JCS, 2011 WL 4831201, at

*4 (N.D. Cal. Oct. 12, 2011).

### C.    Inherent Power of the Court

"[I]nherent in the power [of] the courts is the authority to award attorney's fees when the

losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Octane*, 134 S.

Ct. at 1758 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59) (internal

quotations omitted); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991). The bar for

sanctions under 28 U.S.C § 1927 and the Court's inherent authority is "considerably higher" than the

bar for sanctions under the Patent Act. *EON Corp. IP Holdings LLC v. Cisco Sys.*, 2014 U.S. Dist.

LEXIS 101923, at *23 (N.D. Cal. July 25, 2014).

## IV.   ARGUMENT

Adobe fails to establish any valid basis for recovering attorney's fees. This case is not

exceptional under 35 U.S.C. §285, Blue Spike's counsel did not unreasonably and vexatiously

GARTEISER HONEA – TRIAL ATTORNEYS

multiply the proceedings under 28 U.S.C. §1927, and attorney's fees are not warranted under any other authority that Adobe cites in passing. Furthermore, even if some amount of attorney's fees were warranted, the award should be drastically reduced from what Adobe requests to reflect the procedural posture of this case and Adobe's lack of billing judgment.[47]

### A. 35 U.S.C. §285 DOES NOT SUPPORT A FEE AWARD HERE.

#### 1. Fees are Unwarranted for Two Threshold Reasons.

##### i. This case ended before discovery or claim construction, which is too early for the Court to determine that Blue Spike's claims lacked merit.

Adobe cannot collect fees under 35 U.S.C. §285 because, under precedent from this Court and the Federal Circuit, the case has not progressed far enough. *See Rothschild Digital Media Innovations, LLC v. Sony Computer Entm't Am. LLC*, 2015 U.S. Dist. LEXIS 44891, *12 (N.D. Cal. Apr. 2, 2015) (denying fees under Section 285 because "[a] Markman hearing and full claim construction is required."). Indeed, Adobe fails to cite to a single case in which fees were awarded at such an early juncture. For instance, in *Am. Tech. Inc. v. Am. Future Tech. Corp.*, the Court determined attorney's fees were unwarranted "in light of the fact that the claims were not construed and factual matters regarding infringement require development." 2012 U.S. Dist. LEXIS 33992, *22 (M.D. Fla. Mar. 14, 2012); *see also Eon-Net LP v. Flagstar Bancorp* 249 F.App'x 189, 195 (Fed. Cir.

---

[47] Blue Spike notes that there is an inherent conflict of interest between Blue Spike, LLC and Garteiser Honea PLLC as to the division of responsibility for payment of attorney's fees. Should the Court determine over Blue Spike and Garteiser Honea's objections that an award of fees is appropriate, then Blue Spike and Garteiser Honea request an opportunity to obtain separate counsel for Blue Spike in order to provide supplemental briefing and argument to the Court as to who should bear the responsibility for payment.

Furthermore, should the Court determine that an award of attorney's fees is appropriate, Blue Spike requests an opportunity to brief the appropriateness of Adobe's requested fees. Blue Spike believes that the amount of fees requested is shocking to the conscience given that this case has not proceeded beyond the pleading stage, and that, at best, the attorney's fees are unreasonable and redundant and at worst demonstrate a lack of billing judgment. "[H]ours that are excessive, redundant, or otherwise unnecessary" should be excluded from the request for attorney's fees. *Navarro v. General Nutrition Corp.*, 2004 U.S. Dist. LEXIS 24258, at *25 (N.D. Cal. Nov. 19, 2004) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The movant bears the burden of showing it has exercised "billing judgment," and based on the limited information provided in Adobe's declaration, Adobe has not met its burden of showing that all of the hours billed were necessary to the resolution of this dispute. For these reasons, Blue Spikes requests an opportunity to further brief the appropriateness of the fees sought by Adobe.

GARTEISER HONEA – TRIAL ATTORNEYS

2007) (vacating award of attorney's fees because plaintiff had not had the opportunity to present arguments on claim construction); *Armacell LLC v. Aeroflex USA, Inc.*, 2015 U.S. Dist. LEXIS 81614, *12 (M.D.N.C. June 24, 2015) (denying attorney's fees because the court could not determine whether claims were unreasonable pre-*Markman* hearing). Here, considering that this case never reached claim construction or discovery, awarding fees under 35 U.S.C. §285 would be improper.

### ii.    Allowing fees will not prevent a gross injustice.

Nor is Adobe entitled to fees under 35 U.S.C. §285, as it has failed to show that the fees will remedy some gross injustice. When enacting §285, Congress clarified that fees awarded to alleged infringers under §285 are contingent upon a showing of gross injustice. *Mach. Corp. of Am. v. Gullfiber Ab*, 774 F.2d 467, 472 (Fed. Cir. 1985) ("There is no expressed limitation in this legislative history on the award of fees to a *patentee*. On the other hand, in connection with an award of fees to an *alleged infringer*, the report mentions prevention of 'a gross injustice.'") (emphasis added). Adobe has not even attempted to make this showing because it cannot. Blue Spike had sufficient indication that Adobe infringed its patents-in-suit: Blue Spike's initial infringement contentions were upheld in the District where Blue Spike brought suit, and after the case was transferred to the Northern District of California, Blue Spike dismissed the case before it proceeded beyond service of infringement contentions. Further, Blue Spike should not be penalized for "bad faith" for failing to meet this Court's local rules, as its infringement contentions fully satisfied the contentions standards of the E.D. Texas, where Blue Spike initially brought suit. The facts here simply do not warrant the required finding of "gross injustice."

### 2.    Blue Spike's Conduct Was Not Exceptional.

In addition to failing under the two threshold issues just discussed, Adobe's fee claim is also unwarranted because Adobe fails to show that is a "rare case" that "stands out from others," as required to meet the definition of "exceptional." *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749. By filing its motion to strike Blue Spike's infringement contentions, Adobe successfully created the illusion that Blue Spike was refusing to adhere to this Court's local rules. But Adobe neglects to disclose the evidence showing that Blue Spike was in the process of addressing Adobe's claims when Adobe rushed to court. (Garteiser Decl., ¶ 20, Ex. 23).

It would be inequitable to allow Adobe to manufacture an "exceptional" case based on its own refusal to allow Blue Spike a reasonable time (less than four weeks) to revise its infringement contentions. As Blue Spike's conduct toward Google in this Court shows, Blue Spike is very willing to handle infringement-contention disputes outside of the courtroom. That situation regarded virtually identical issues; Google largely shared Adobe's complaints about Blue Spike's infringement contentions under the local rules, and Blue Spike dealt with all of those to Google's satisfaction outside of court. (Garteiser Decl. ¶¶ 28-31, Exs. 31-34).

### i.        Blue Spike's litigating position was not baseless.

Since *Octane*, courts have continued to "hold claims of baselessness to a high bar." *Small v. Implant Direct Mfg. LLC*, No. 06 CIV. 683 NRB, 2014 WL 5463621, at *3-4 (S.D.N.Y. Oct. 23, 2014). In its review of post-*Octane* cases—including many cases in this district—the Southern District of New York held that "[m]ere assertions that a party's arguments were without merit are generally unavailing" and that courts are "more likely to award fees where a party knew or willfully ignored evidence of his claims' meritlessness, where such meritlessness could have been discovered by basic pre-trial investigation, or where such meritlessness is made clear to the court early in litigation." *Id.* Despite Adobe's attempts to frame Blue Spike's claims as baseless, the actual evidence undermines that allegation.

Adobe purchased a company that practiced digital fingerprinting technology that appeared to infringe the patents-in-suit. (Garteiser Decl. ¶¶ 2-4; Honea Decl,, ¶¶ 10-11, Exs. 1-2). Adobe continued to advertise the products of that company after this lawsuit began. (Honea Decl,, ¶ 10, Ex. 1). Although insisting that Yahoo! had purchased all of the fingerprinting software from that company, Adobe also admitted that it had actually possessed both source code and clients from that company up to two years after the Yahoo! purchase. Adobe refused to clarify or substantiate its self-contradictory story—that Yahoo! purchased all of Auditude's fingerprinting technology but that Adobe somehow received fingerprinting source code and clients—while at the same time claiming that it was covered by Yahoo!'s license of Blue Spike's technology. (Garteiser Decl. ¶ 4; Honea Decl., ¶ 17, Ex. 8). Tellingly, if Adobe had no potentially infringing technology, it would not have needed to claim a license defense.

Here—with Adobe admitting it had previously possessed digital fingerprinting clients and technology—Blue Spike believed it was entitled to damages for past infringement at the very least. And Adobe's knowledge of the patents-in-suit is implied by their co-inventor's employment at Adobe during the alleged infringement period.[48] On these facts, Blue Spike's claims were not "baseless" as defined in *Octane* and its progeny. *Contra* Mot. at 2.

Independently, as a matter of law, Blue Spike's claims cannot be found baseless when the case never proceeded to claim construction. *See, e.g., Eon-Net* LP, 249 F.App'x. at 195; *Rothschild Digital Media Innovations, LLC v. Sony Computer Entm't Am. LLC*, 2015 U.S. Dist. LEXIS 44891 at *12; *Armacell LLC*, 2015 U.S. Dist. LEXIS 81614 at *12 (M.D.N.C. June 24, 2015). Adobe's argument that Blue Spike's claims were baseless is really an argument the infringement contentions were insufficient, but that is not enough to support an award of fees—especially given that Blue Spike's infringement contentions were adequate in the court where it filed suit. *See Levine v. The Entrust Grp., Inc.*, No. C 12-03959, 2013 WL 3973780, at *1 (N.D. Cal. July 31, 2013) ("That plaintiffs were unable to cure the deficiencies of the first [set of infringement contentions] does not mean that their claims were brought in bad faith or that the claims were entirely frivolous.").

### ii.    Blue Spike's conduct was not egregious.

"[P]ost-*Octane* decisions awarding fees have concerned egregious behavior." *Gametek LLC v. Zynga, Inc.*, 2014 U.S. Dist. LEXIS 122834, *12-13 (N.D. Cal. Sept. 2, 2014) (citing cases in which parties submitted "false declarations before the PTO"; filed "post-trial motions that simply sought to re-litigate issues decided during trial"; and sought "a preliminary injunction based in large part on a previously-rejected theory of liability"). The facts here do not come close to the required "egregious behavior" for multiple reasons.

For one, although Adobe takes issue with nearly all of Blue Spike's litigation positions, Adobe has not shown that Blue Spike ever intended to harass it. *Contra* Mot. at 21; *see JS Prods. v. Kabo Tool Co.*, 2014 U.S. Dist. LEXIS 176275, *14-15 (D. Nev. Dec. 22, 2014) (denying attorney's fees, despite noting that defendant's complaint of harassment was "plausible," because "[w]ithout evidence in the record, [the defendant's] suspicions, even if well-founded, are not enough to cause

---

[48] Garteiser Decl., ¶ 34, Ex. 37.

GARTEISER HONEA – TRIAL ATTORNEYS

this case to stand out as exceptional"). Blue Spike did not harass Adobe by bringing suit where Blue Spike is headquartered; by serving infringement contentions that were similar to those upheld by the Eastern District of Texas; or by attempting out-of-court resolutions to Adobe's issues with Blue Spike's infringement contentions. Blue Spike did not intentionally delay litigation for the purpose of harassing Adobe—though such a finding would not warrant fees in any case. *See EON Corp. IP Holdings LLC v. Cisco Sys.*, 2014 U.S. Dist. LEXIS 101923, *19-21 (N.D. Cal. July 25, 2014) (denying fees even though the plaintiff "delayed litigation" and continued to litigate even though its post-*Markman* "infringement contentions lack merit"); *see TriReme Med., LLC v. Angioscore, Inc.*, 2015 U.S. Dist. LEXIS 70633, *7-8 (N.D. Cal. May 28, 2015) (post-*Octane* ruling denying fees despite plaintiff's decision to ignore a dispositive document).

Adobe also takes issue with a number of Blue Spike's legal positions (*see* Mot. at 22), but the unsurprising fact that litigants often disagree cannot support an award of fees. *See Immersion Corp. v. Sony Computer Entm't Am., Inc.*, 2005 U.S. Dist. LEXIS 4777, *35 (N.D. Cal. Jan. 10, 2005) (denying fee's even though Sony's "refusals and its justifications thereof were aggressively unhelpful" because they were still not necessarily "entirely unreasonable"). Nor would an outright misunderstanding of the law by Blue Spike form a sufficient basis for fees. *See, e.g., Site Update Solutions, LLC v. Accor North America, Inc.*, 2015 U.S. Dist. LEXIS 17603, *33 (N.D. Cal. Feb. 11, 2015) (denying attorney's fees under Section 285 despite plaintiff's "misunderstanding of the law").

### 3.   Even if Blue Spike's Conduct Before the Court Were Somehow "Exceptional," Its Conduct Over the Entirety of the Case Was Not.

Even if some of Blue Spike's conduct before this Court qualified as "exceptional"—which Blue Spike strongly disputes—attorney's fees are unwarranted because its conduct during the case *as a whole* has not been exceptional. *See MyMedicalRecords, Inc. v. Jardogs, LLC*, 2015 U.S. Dist. LEXIS 51804, *9-10 (C.D. Cal. Apr. 20, 2015) (post-*Octane* ruling denying attorney's fees despite conduct that was "unreasonable" and "unnecessarily prolonged litigation and expended the parties' and the Court's resources" because unreasonable conduct did not span the entire litigation). Blue Spike brought suit against Adobe where Blue Spike was established, where its president resides, and where its servers and documents are stored. (Garteiser Decl., ¶ 9). It served Adobe with infringement

GARTEISER HONEA – TRIAL ATTORNEYS

contentions like those accepted by the E.D. Texas in another case—even though attacked on many of the same grounds as Adobe had argued (including willful infringement, direct infringement, doctrine of equivalents, and grouping of products). When the case was transferred to this Court, Blue Spike worked with Adobe to resolve the remaining issues regarding the infringement contentions (including the Court's heightened requirements), but Adobe filed its motion to strike without waiting for Blue Spike's revisions. Even so, Blue Spike significantly reduced the number of claims it asserted and reduced the number of products it accused to just one. (Garteiser Decl., ¶ 11). Even if Adobe were absolved of all responsibility in mishandling the infringement contentions, Blue Spike's conduct over the vast majority of this case does not equal the improper "exceptional" conduct required to impose fees.

### 4.    Blue Spike's Behavior Does Not Constitute "Misconduct."

Adobe mischaracterizes Blue Spike's actions as misconduct. Mot. at 15. But Adobe's argument fails for the same reason as its argument that Blue Spike's claims were baseless: misconduct alone is not enough; the case must be truly exceptional. *Parker West Int'l, LLC v. Clean Up Am., Inc.*, 2009 U.S. Dist. LEXIS 86346, *24 fn. 5 (N.D. Cal. Sept. 1, 2009) ("Although the charge of litigation misconduct is not without any basis, the Court is not inclined to find that this is a case where the misconduct has reached such a level that it should be deemed exceptional.").

Blue Spike's actions, even as mischaracterized by Adobe, do not constitute "misconduct" as this Court has interpreted that term. Blue Spike has never "lied under oath at a deposition and trial about a forged signature submitted to the PTO," "lied about the purported conception of the invention," "attempted to bribe a witness," "served and verified under oath a knowingly false interrogatory response," or "failed to produce relevant documents during discovery." *Applied Materials, Inc. v. Multimetrixs, LLC,* 2009 U.S. Dist. LEXIS 44061, *8-9 (N.D. Cal. May 26, 2009); *see also Parker West Int'l, LLC v. Clean Up Am., Inc.*, 2009 U.S. Dist. LEXIS 86346, *24-25 (N.D. Cal. Sept. 1, 2009); *Atmel Corp. v. Silicon Storage Tech., Inc.*, 2002 U.S. Dist. LEXIS 27109, *37-38 (N.D. Cal. June 21, 2002) (finding no litigation misconduct even when "lawyers may have pushed the boundaries of acceptable courtroom decorum and may have used every known artifice to convince the jury"); *Immersion Corp. v. Sony Computer Entm't Am., Inc.*, 2005 U.S. Dist. LEXIS 4777, *34-35

(N.D. Cal. Jan. 10, 2005) (denying fees even though the Court was "extremely disappointed by the present inability of counsel to professionally resolve discovery disputes"). Blue Spike conducted an adequate pre-filing investigation. (Garteiser Decl., ¶¶ 2-6). And Blue Spike believes there is still significant evidence indicating Adobe infringes or has infringed, which Adobe refuses to rebut other than by attorney argument. (Garteiser Decl., ¶ 4, 7).

### 5.    Blue Spike Engaged in Good-Faith Settlement Negotiations.

Blue Spike never sought a "nuisance" settlement from Adobe. The parties discussed settlement while the case was in Texas, and Blue Spike eventually lowered its demand based entirely on Adobe's unsupported assurances that its fingerprinting technologies, customers, and clients were all in the past. (Honea Decl., ¶¶ 3-6, 12, Ex. 3; Garteiser Decl., ¶ 24, Ex. 27). When this case was transferred to this Court, Adobe ceased settlement discussions and focused on its procedural attack of Blue Spike's infringement contentions. Blue Spike's settlement demand was based on past damages. This fact is supported by Blue Spike's history of settlements for these patents. *Contra* Mot. at 3 (failing to specify a single settlement amount but baldly alleging "the settlements that Adobe is aware of have been for substantially less than the cost of litigation") (citing Fisher Decl. ¶28). Blue Spike settled with Yahoo! and Shazam for amounts that cannot be considered "nuisance value." Yet, showing good faith, Blue Spike has also settled with other defendants for $0 when Blue Spike received corroborating assurance that those defendants were not practicing the patents-in-suit. Honea Decl. ¶¶ 25-27, Exs. 16-18).

Indeed, Adobe's allegations of "nuisance settlement" proposals are a red herring, as such proposals do not justify awarding fees. "[S]ettlement figures alone are insufficient to demonstrate bad faith." *Components, Inc. v. Micron Tech., Inc.*, 2012 U.S. Dist. LEXIS 76584, 2012 WL 1981698, at *6 (E.D. Va.); *see also Site Update Solutions, LLC v. Accor N. Am., Inc.*, 2015 U.S. Dist. LEXIS 17603, *48-52 (N.D. Cal. Feb. 11, 2015).

Blue Spike implores the Court to read the §285 cases that Adobe cites. If it does so, it will see that not a single one of them involved even remotely comparable circumstances. Nor has Adobe cited a single case where §285 fees were awarded pre-discovery and pre-claim construction. Awarding §285 fees is simply improper here.

**B.    FEES ARE NOT WARRANTED UNDER 28 USC § 1927.**

The "bar for sanctions" under 28 U.S.C. §1927" is "considerably higher" than the bar for sanctions under 35 U.S.C. §285. *EON Corp.IP Holdings LLC v. Cisco Sys. Inc.*, No. 12-CV-01011-JST, 2014 WL 3726170, at *6 (N.D. Cal. July 25, 2014). "[C]ourts award sanctions sparingly" under §1927, since "the strong public policy in favor of the peaceful resolution of disputes in the courts requires that attorneys not be deterred from pursuing legal remedies because of a fear of personal liability. To decide otherwise would inject undesirable self-protective reservations into the attorney's counseling role, and prevent counsel from devoting their entire energies to their clients' interests." *Johnson v. Hewlett-Packard Co.*, No. C 09-03596 CRB, 2014 WL 3703993, at *5 (N.D. Cal. July 24, 2014); *accord Cmty. Hous. P'ship v. Byrd*, No. 13-3031 JSC, 2013 WL 6087350, at *7 (N.D. Cal. Nov. 19, 2013) (§1927 "is a punitive statute and correspondingly must be construed restrictively"). Thus, even when attorney conduct warrants §1927 sanctions, a court should award only those fees incurred after "the point at which it was absolutely clear that the case had no merit." *In re Haynes*, No. C 10-4642 PJH, 2013 WL 1195524, at *5 (N.D. Cal. Mar. 22, 2013).

Adobe cites two cases that supposedly support an award of §1927 fees here, but neither is actually on point. This is critical, because "before sanctions may validly be imposed, the conduct in question must be sanctionable *under the precise authority relied upon.*" *Schutts v. Bentley Nevada Corp.*, 966 F. Supp. 1549, 1559 (D. Nev. 1997) (emphasis added) (citing *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 490 (9th Cir.1988)). Due process demands such fair warning and notice of the potential bases for imposing sanctions.

Adobe first cites *Baldwin Hardware Corp. v. FrankSu Enterprise Corp.* for the proposition that §1927 supports awarding fees for "failing to obey court orders and local rules." Mot. 25. But the district court in *Baldwin* did not actually award §1927 fees for either of those reasons. Rather, it awarded §1927 fees because the attorneys (1) caused a delay in the commencement of trial; (2) brought a frivolous motion to dismiss, which necessitated additional briefing; (3) tardily introduced prior-art evidence, which necessitated additional briefing; and (4) spent significant trial time on the tardily introduced prior art. *See* 78 F.3d 550, 560-61 (Fed. Cir. 1996). Each of these makes sense as a basis for sanctions under §1927, but not because they represent a "failing to obey

court orders," as Adobe claims. Rather, each makes sense as a basis for sanctions under §1927 because each unreasonably and vexatiously multiplied the proceedings, which is what the statute addresses. Further, the *Baldwin* court awarded fees "for failing to obey local rules," but did so under C.D. Cal. Local Rule 27.1—not under 28 U.S.C. §1927 as Adobe claims. *See id.* at 560. *Baldwin* simply does not support Adobe's proposition that §1927 allows a court to award fees for "failing to obey court orders and local rules." This makes sense given that §1927 concerns "multiplying the proceedings" in bad faith, not failure to obey court orders and local rules in a particular instance.

Next, Adobe cites *Lee Yunn Enterprises* for the proposition that §1927 supports an award of fees when a party (1) fails "to offer evidence of infringement on several claim elements" and (2) conducts "inadequate pre-filing investigation." Mot. 25. But Adobe's reading of *Lee Yun* contradicts how the *Lee Yun* court itself explained its award of fees under §1927. There, the court explained that the Park Law Firm, which represented the plaintiff (IIMC), "unnreasonably and vexatiously multiplied the proceedings" through (1) "[t]he continued unreasonable assertion of infringement, particularly in the absence of an additional investigation or testing"; (2) "the relationship between IIMC and the Park Law Firm"; and (3) "the improper communication with a represented Defendant by . . . an employee" of the Park Law Firm. 2009 WL 9137315 at *4. The only one of these justifications that is potentially relevant here is the first,[49] but examining *Lee Yun* closely reveals that IIMC's "continued unreasonable assertion of infringement" in that case was nothing like what Blue Spike stands accused of here.

In *Lee Yun*, the "vast majority" of IIMC's 44 claims were "method claims describing different methods for manufacturing blankets." *Id.* at *1. Specifically, 41 of the 44 claims required as a limitation that any accused blankets be "manufactured under a process that included 'heat setting' or 'heat requirement.'" *Id.* Yet even "as of the date of the summary judgment hearing," IIMC still "had no evidence supporting its contention that the accused blankets" were manufactured using any sort of heat-setting process. *Id.* Indeed, even though IIMC was suing on *method* claims, its "allegation of infringement was based on nothing more than the 'structure' of the [accused] blankets and their supposed product labels, and on 'information and belief' that certain steps 'were' or 'may have been'

---

[49] It is not clear how the second and third justifications could have supported an award under §1927, as they do not obviously relate to multiplying the proceedings. The court does not explain it.

GARTEISER HONEA – TRIAL ATTORNEYS

performed" during their manufacturing process. *Id*. This approach was flatly inconsistent with "IIMC's burden of showing *the precise manufacturing methods* that were used." *Id*. (emphasis added). IIMC admitted "that the existence of the heat treating step essential to nearly every asserted claim could only be established through test results," yet IIMC never bothered to complete that testing. *Id*. Indeed, "IIMC had not even *begun* adequate testing of the accused products by the time th[e] Court granted Defendants' motion for summary judgment." *Id*. (emphasis added). In other words, IIMC's attorneys made no effort, despite ample opportunity, to gather the evidence necessary to support their client's infringement claims. It makes sense for a court to conclude that attorneys have "unreasonably and vexatiously multiplied the proceedings" if the attorneys do not even try to collect vital evidence while continuing to litigate—*all the way to the summary-judgment hearing*. *Id*. Here, in contrast, Blue Spike's attorneys stand accused of doing just the opposite—namely, seeking discovery too zealously. *See* Mot. 24. *Lee Yun* offers no guidance for such a situation.

It is true that the *Lee Yun* court separately criticized IIMC's attorneys for failing "to make a proper pre-suit investigation" (*id*.), but that criticism was *not* the basis for the award of fees under §1927. By the court's own words, the award of fees under §1927 was based on "[t]he *continued* unreasonable assertion of infringement" by IIMC—not on the *initial* unreasonable assertion of infringement by IIMC. *Id.* at *4 (emphasis added). This makes sense given that §1927 concerns "multiplying" a proceeding unreasonably, not "initiating" a proceeding unreasonably.[50] 28 U.S.C. §1927. An insufficient pre-suit investigation results only in the latter, which is why "[i]n the Ninth Circuit, Section 1927 cannot be applied to a complaint." *Schutts*, 966 F. Supp. at 1559. Rather, "Section 1927 applies only to unnecessary filings and tactics *once a lawsuit has begun*: It is only possible to 'multiply' a proceeding after the complaint is filed." *Id*. IIMC's inadequate pre-suit investigation—like Blue Spike's allegedly inadequate pre-suit investigation—simply cannot support an award of fees under §1927. *See Chavez v. Northland Grp.*, No. CV-09-2521-PHX-LOA, 2011 WL 317482, at *6 (D. Ariz. Feb. 1, 2011) ("Even assuming that K & M filed the claims in this action in bad faith and with full knowledge that they lacked merit, such conduct would not be sanctionable under Section 1927."); *Bender v. Freed*, 436 F.3d 747, 751 (7th Cir. 2006) (§1927 does not apply to

[50] Courts deal with the latter via FED. R. CIV. P. 11.

GARTEISER HONEA – TRIAL ATTORNEYS

"misconduct that occurs before the case appears on the federal court's docket"; "the statute provides a discretionary sanction against attorneys who abuse the judicial process, not those who engage in improper conduct in the runup to litigation.").

In sum, the cases that Adobe cites do not support an award of fees under §1927. That should conclude the Court's consideration of the matter, as "the conduct in question must be sanctionable *under the precise authority relied upon.*" *Schutts*, 966 F.Supp. at 1559 (emphasis added). But even leaving that issue aside, precedent from this Court likewise indicates that a §1927 award is inappropriate for several additional reasons.

First, this case ended far too early for the Court to impose §1927 sanctions. Even when attorney conduct is so egregious as to warrant sanctions under §1927, a court should award only those fees incurred after "the point at which it was absolutely clear that the case had no merit." *In re Haynes*, No. C 10-4642 PJH, 2013 WL 1195524, at *5 (N.D. Cal. Mar. 22, 2013). But this case never reached that point, as no discovery, no *Markman* hearing, and no claim construction occurred. *See Dutra v. BFI Waste Mgmt. Sys. of N. Am., Inc.*, No. 14-CV-04623-NC, 2015 WL 2251203, at *5 (N.D. Cal. May 13, 2015) (denying §1927 sanctions because "[t]he Ninth Circuit instructs courts to be reluctant in imposing sanctions, 'especially . . . before an opportunity for discovery'") (quoting *Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir. 1987)); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. C 09-5235 MMC, 2013 WL 684915, at *3 (N.D. Cal. Feb. 25, 2013) (denying §1927 sanctions because "it is preferable that a motion for sanctions not be filed prior to a *Markman* hearing and the resulting claim construction.").

Second, while Adobe "informed" Blue Spike of its belief that none of the accused products practiced digital fingerprinting, it never provided actual evidence to support that belief. And even if it had, Blue Spike was not required to credit its opponents' self-serving denials of liability. "[D]enials alone do not provide a basis to sanction [Blue Spike] because when presented with some evidence contrary to their claim, [Blue Spike], like all litigants, had the right to decide whether to dismiss the action or proceed with discovery." *Benedict v. Hewlett-Packard Co.*, No. 13-CV-00119-LHK, 2014

GARTEISER HONEA – TRIAL ATTORNEYS

WL 234207, at *8 (N.D. Cal. Jan. 21, 2014).[51] Like Rule 11, §1927 "cannot possibly require that an attorney accept as true the uncorroborated denials of an adversary because that would . . . conflict with the primary duty of an attorney to represent his or her client zealously." *Id.*

Third, several of Adobe's alleged bases for awarding §1927 sanctions are things that Blue Spike did in the Eastern District of Texas before this case was transferred here (e.g., opposing Adobe's transfer motion, opposing Adobe's stay request pending disposition of the transfer motion, asserting all 114 claims from the four asserted patents). *See* Mot. 23-24. While Blue Spike believes that all of its pre-transfer actions were justified, those actions cannot support §1927 sanctions in any event, as "[s]anctions imposed pursuant to 28 U.S.C. §1927 . . . may only be imposed based on activities before the sanctioning court." *SalesBrain, Inc. v. AngelVision Techs.*, No. C 12-05026 LB, 2013 WL 2422762, at *3 (N.D. Cal. June 3, 2013) (citing *GRiD Sys. Corp. v. John Fluke Mfg. Co.*, 41 F.3d 1318, 1319 (9th Cir. 1994)). Blue Spike's actions in the Eastern District of Texas apparently account for the bulk of the fees Adobe seeks (*see* Mot. 5), but they simply cannot factor into the Court's consideration of whether to impose §1927 sanctions.

Fourth, Blue Spike's service of amended infringement contentions post-transfer does not support §1927 sanctions (*contra* Mot. 23-24), even though Adobe (and ultimately the Court) found those contentions unsatisfactory. "That plaintiffs were unable to cure the deficiencies of the first [set of infringement contentions] does not mean that their claims were brought in bad faith or that the claims were entirely frivolous." *Levine v. The Entrust Grp., Inc.*, No. C 12-03959, 2013 WL 3973780, at *1 (N.D. Cal. July 31, 2013). Blue Spike continued pursuing its claims in good faith and to this day it believes that Adobe is, at minimum, liable for past infringement. Blue Spike had every right to continue pursuing what it thought were valid claims. *See Boyd v. Accuray, Inc.*, No. 11-CV-01644-LHK, 2012 WL 4936591, at *7 (N.D. Cal. Oct. 17, 2012) ("To the extent that Accuray intends

---

[51] The *Benedict* court relied on *Malibu Media, LLC v. Maness*, No. 12–CV–01873–RBJ–MEH, 2012 WL 7848837, at *6 (D. Colo. 2012), *report and recommendation adopted*, 12–CV–01873–RBJ, 2013 WL 1397275 (D. Colo. 2013), where the district court declined "to order sanctions under 28 U.S.C. §1927 where plaintiff sued for copyright infringement notwithstanding defendant's pre-filing proffer of evidence to the contrary." *Id.* The *Malibu Media* court reasoned that a "plaintiff may be understandably and even reasonably skeptical of a defendant's assertion of innocence" and "has a constitutional right to file a lawsuit and engage in discovery to determine" whether there was infringement. *Id.*

GARTEISER HONEA – TRIAL ATTORNEYS

to suggest that §1927 can be used to sanction an attorney for failure to withdraw a claim, Accuray cites no authority establishing that such sanctions would be appropriate, and the Court is aware of none.").

Fifth, Blue Spike's eventual attempt to dismiss its claims without prejudice (rather than with prejudice) does not warrant §1927 sanctions. As Magistrate Judge Vadas has noted, "dismissing the action of [its] own volition" is a way for a party to *avoid* unnecessarily multiplying the proceedings. *Thompson v. Harris*, No. 12-CV-06529-NJV, 2014 WL 2930789, at *6 (N.D. Cal. June 27, 2014). That is exactly what Blue Spike attempted to do here. The only reason its attempt resulted in additional briefing is that Adobe opposed it. Section 1927 sanctions are inappropriate when, as here, "both parties bear some responsibility" for the multiplied proceedings. *NovelPoster v. Javitch Canfield Grp.*, No. 13-CV-05186-WHO(JCS), 2014 WL 7149216, at- *14 (N.D. Cal. Dec. 12, 2014).

Finally, even if a court believes that an "action is meritless," it should not impose sanctions unless it also finds "*evidence* of intention to harass." *Dutra* 2015 WL 2251203 at *5 (emphasis added). The burden to produce such evidence is on Adobe. *Levine*, 2013 WL 3973780 at *1 ("Defendant must *demonstrate* either that plaintiffs' counsel knew their claims were frivolous or that they recklessly raised frivolous arguments.") (emphasis added). Yet Adobe provides no such evidence. And, here, Blue Spike did not continue litigating beyond "the point at which it was absolutely clear that the case had no merit." *In re Haynes*, 2013 WL 1195524 at *5. Blue Spike made a strategic decision to dismiss its claims before discovery or claim construction occurred, reasoning that its efforts were best focused elsewhere. That does not justify sanctions under §1927.

## C.   ATTORNEY'S FEES ARE NOT WARRANTED UNDER RULE 41(A)(2), RULE 54(D), CIVIL LOCAL RULE 1-4, OR THE COURT'S INHERENT POWER.

Adobe states in passing that sanctions are warranted under Rule 41, Rule 54(d), Civil Local Rule 1-4, and the Court's inherent power. *See* Mot. 1, 15.[52] But Adobe never mention those bases

---

[52] Adobe implies that Rule 11 itself supports an award of fees (with repeated reference to alleged "frivolous" arguments, lack of "pre-filing" investigation, and the like). Yet a fee claim based on Rule 11 would be untimely. *See Pascual v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 18592, at *20 (N.D. Cal. Feb. 13, 2014); *see also TQP Dev., LLC v. Branch Banking & Trust Co.*, 2014 U.S. Dist. LEXIS 4703 (E.D. Tex. Jan. 14, 2014). Adobe never sought sanctions for any of the alleged misconduct or frivolous arguments during the nearly three years this case was pending in E.D. Texas

again or makes any argument for applying them here, so the Court need not consider them as grounds for imposing sanctions. *See Chem v. New York Life Ins. Co.*, No. C 97-1780 SBA, 1997 WL 792942, at *3 (N.D. Cal. Oct. 21, 1997), *aff'd*, 168 F.3d 498 (9th Cir. 1999) ("[A] court need not address an issue which is raised in a summary manner which has not been adequately briefed."). But out of an abundance of caution, Blue Spike addresses these issues and brings the Court's attention to the simple fact that these Rules do not warrant sanctions.

Rule 41 permits a trial court to award "costs incurred for the preparation of work product rendered useless by" a voluntary dismissal *without* prejudice,[53] but "[a]ttorneys' fees and costs will not be imposed as a condition for voluntary dismissal *with* prejudice because there is no risk of future litigation." *Larsen v. King Arthur Flour Co.*, No. C 11-05495 CRB, 2012 WL 2590386, at *1 (N.D. Cal. July 3, 2012) (emphasis added); *see also Co-Investor, AG v. Fonjax, Inc.*, No. C 08-1812 SBA, 2010 WL 1292767, at *3 (N.D. Cal. Mar. 31, 2010) ("[W]hen the request presented is for a dismissal with prejudice, federal courts have concluded that the payment of fees and costs may not be imposed as a condition for dismissal."); *Burnette v. Godshall*, 828 F.Supp. 1439, 1443 (N.D.Cal.1993) ("Since the . . . cause of action has been dismissed with prejudice, costs and attorneys' fees cannot be awarded to Defendants because there is no future risk of litigation.").

Although Blue Spike's motion for voluntary dismissal requested dismissal without prejudice, the Court saw fit to order the case dismissed *with* prejudice. In so doing, the Court explicitly declined to award attorney's fees as a condition of dismissal. *See* Dkt. No. 74 at 5 (citing *Optimal Mkts., Inc. v. FTI Consulting, Inc.*, 2009 U.S. Dist. LEXIS 50989, 2009 WL 1704665 (N.D. Cal. June 17, 2009), in which the district court declined to condition dismissal under Fed. R. Civ. P. 41(a)(2) on an award of attorney's fees because the defendant's counterclaims remained pending); *compare Kelly v. Eli Lilly & Co.*, 2015 U.S. Dist. LEXIS, at *5-6 (N.D. Cal. Apr. 30, 2015) (conditioning dismissal on an

---

or this Court. Allowing a Rule 11 motion now would deprive Blue Spike the opportunity to avail itself of the "safe harbor" provision of Rule 11(c)(2). Further, sanctions would only be appropriate where a pleading "is filed for an improper purpose such as harassment or delay, when the claims in the complaint are unwarranted under existing law or a nonfrivolous argument for extension of the law, or when the allegations in the complaint are without evidentiary support and unlikely to have evidentiary support after further investigation and discovery. *See* Fed. R. Civ. P. 11(b), (c). As discussed, none of those bases is present here. As shown by repeated attempts to engage in fact discovery, Blue Spike believed further investigation would yield more evidence for its claims.
[53] *Koch v. Hankins*, 8 F.3d 650, 652 (9th Cir. 1993).

GARTEISER HONEA – TRIAL ATTORNEYS

award of attorney's fees, ordering the parties to submit a proposed order regarding a fair and appropriate award of fees, and explicitly retaining jurisdiction over the determination of appropriate fees and costs). Adobe somehow understands this Court's order and district precedent to mean the Court can retroactively condition the dismissal of this case on an award of attorney's fees. Blue Spike has not been able to find any case law to support this position, and Adobe cites none. It defies logic that the Court can condition dismissal on an award of attorney's fees after already dismissing the case. Indeed, dismissal of its case *with* prejudice is a significant penalty in itself.

Similar to Rule 41, Rule 54(d) "creates a procedure but not a right." *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1280 (9th Cir. 1999). That is to say, "Rule 54(d)(2) recognizes the *possibility* of awards of 'attorney's fees and related non-taxable expenses' and establishes a procedure for asserting a right to such an award," but it "does not provide a rule of decision." *Id*. at 1281. "Rather, it and the accompanying advisory committee comment recognize that there must be another source of authority for such an award. The requirement under Rule 54(d)(2) of an independent source of authority for an award of attorneys' fees gives effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award." *Id*. As argued above, a fee award would be improper under the statutory bases Adobe cites here (35 U.S.C. §285 and 28 U.S.C. §1927), making Rule 54(d) inapplicable.

Nor is Civil Local Rule 1-4 ("L.R. 1-4") a standalone basis for awarding attorney's fees to an opponent. Rather, the authority to grant attorney's fees under local rules rests in the Court's inherent powers to sanction and the congressional grant of authority to district courts to promulgate rules governing the practice of the law within the district. *Zambrano v. City of Tustin*, 885 F.3d 1473, 1479 (9th Cir. 1989). The Ninth Circuit has held that the exercise of inherent powers should be with "restraint and discretion," and "there are factual and legal prerequisites to the exercise of" the Court's inherent powers. *Id*. In particular, the Court has "routinely insisted upon a finding of bad faith before sanctions may be imposed under the court's inherent power." *Id*. Also, in order to properly sanction an attorney under the local rules, "courts have required conduct amounting to recklessness, gross negligence, repeated—although unintentional—flouting of court rules, or willful misconduct." *Id*. at 1480. And, as the Ninth Circuit explained in *Zambrano*, the awarding of attorney's fees must be

GARTEISER HONEA – TRIAL ATTORNEYS

GARTEISER HONEA – TRIAL ATTORNEYS

consistent with the "American" rule that absent express statutory authority, bad faith, or willful disobedience of a court order, each party shall bear its own attorney's fees. 885 F.3d at 1481-82 (vacating award of attorney's fees and holding that absent congressional authorization to the contrary, imposing attorney's fees under the local rules promulgated by a district court must meet the bad faith or willful disobedience standard set forth in *Alyeska*).

Imposing sanctions under the Court's inherent power "requires a finding of bad faith or conduct tantamount to bad faith." *Oracle Am., Inc. v. Terix Computer Co., Inc.*, No. 5:13-CV-03385-PSG, 2015 WL 2398993, at *4 (N.D. Cal. May 19, 2015). "[T]he bad-faith requirement sets a high threshold." *Lofton v. Verizon Wireless (VAW) LLC*, No. 13-CV-05665-YGR(JSC), 2015 WL 3805194, at *6 (N.D. Cal. June 18, 2015). Blue Spike has not acted in bad faith here. Blue Spike regrets not explaining the facts as clearly as it should have and not acting as swiftly as the Court felt was proper, but "sloppiness . . . does not amount to misrepresentation or misconduct." *Gaymar Indus. v. Cincinnati Sub-Zero Prods.,* 2015 U.S. App. LEXIS 10736, *19-20 (Fed. Cir. June 25, 2015).

## V.    CONCLUSION

Blue Spike is already suffering the significant penalty of having its claims dismissed with prejudice—even though it still believes Adobe should have been held liable for past infringement. The additional penalty of attorney's fees would unwarranted and unprecedented given the applicable law and the facts. Blue Spike therefore respectfully asks the Court to deny Adobe's motion for attorney's fees.

Dated: July 14, 2015                            Respectfully submitted,

                                                /s/ Randall T. Garteiser
                                                Randall T. Garteiser
                                                Texas Bar No. 24038912
                                                rgarteiser@ghiplaw.com
                                                Christopher A. Honea
                                                Texas Bar No. 24059967
                                                chonea@ghiplaw.com
                                                Christopher S. Johns
                                                Texas Bar No. 24044849
                                                cjohns@ghiplaw.com

1   
2   
3   
4   
5   
6   
7   
8   
9   
10   
11   
12   
13   
14   
15   
16   
17   
18   
19   
20   
21   
22   
23   
24   
25   
26   
27   
28   

Kirk J. Anderson
California Bar No. 289043
Molly A. Jones
California Bar No. 301419
**GARTEISER HONEA, P.C.**
119 W. Ferguson St.
Tyler, Texas 75702
Telephone:  (903) 705-7420
Facsimile:  (888) 908-4400

***Counsel for Blue Spike, LLC***

GARTEISER HONEA – TRIAL ATTORNEYS

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule 5-1. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule 5-1(h)(1). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule 5-1(h)(2), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this day.

 /s/ Randall T. Garteiser
Randall T. Garteiser

GARTEISER HONEA – TRIAL ATTORNEYS